THE STATE EX REL. BEN C. HYDE, Superintendent of Insurance Department, v. HENRY J. WESTHUES, Judge of Circuit Court of Cole County.

Court en Banc, January 24, 1927.

**1. PROHIBITION: Availability.** Prohibition cannot be invoked to serve the purpose of an appeal or writ of error. It lies only when an inferior court is proceeding without jurisdiction or in excess of jurisdiction.

**2. INJUNCTION: Violation: Contempt: Jurisdiction.** If the circuit court was not invested with jurisdiction to grant a temporary injunction and to make an order restraining the Superintendent of Insurance from holding a hearing to consider the reduction of rates of premium charged by stock fire insurance companies and from reducing such rates upon a hearing, its further order adjudging the Superintendent guilty of contempt for violating such restraining order is void, and he cannot be punished for a violation thereof.

**3. ⸺: Insurance Rates: Reduction Order: Enforcement: Unconstitutional Statute.** Where the insurance companies, in their petition to enjoin the Superintendent of Insurance from making an order reducing the premium rates charged by them, based their right to injunctive relief upon the plea that the statute authorizing the reduction was unconstitutional and void, and the injunctive order was made, and the Superintendent in spite of it proceeded to make an order reducing rates, it will be assumed, in his application for a writ prohibiting the circuit court from enforcing its

further order adjudging him guilty of contempt for a violation of the injunctive order, that the unconstitutionality of the statute was well pleaded, and that it was void, and consequently that the rate-reduction order made in pursuance of it was a nullity. But a void rate-reduction order did not alone entitle the insurance companies to injunctive relief; in addition it must have been made to appear that injury was threatened or imminent or in all probability was about to be inflicted. The then statute, alleged to be void, did not give the Superintendent power to prescribe rates; it only conferred upon him power to veto an increase of rates, or to order a reduction of rates, but it contained no specific provisions for the enforcement of his order, and none making it unlawful to charge and collect rates collectible before the order was made, and therefore the mere making of the order, without more, such as a threat to revoke the license to do business of an offending company, did not constitute, directly or indirectly, a trespass upon the property rights of the insurance companies, or effect an invasion of their rights in any respect, and therefore was not a ground for injunctive relief.

4. ———: ———: **Agreement: Subsequent Reduction.** The Superintendent of Insurance cannot bind himself by an agreement that, having made one order reducing the rates to be charged by fire insurance companies, he will not thereafter, or during the pendency of a suit to review the validity of the one made, make another having for its purpose a further reduction; nor did the stipulation in this case so bind him, and if it did it was void. The conditions prescribed by the statute are alone determinative of his duty and authority to make an order reducing rates, and such an agreement cannot be invoked as the basis of an injunction restraining him from making another order further reducing rates pending the final determination of a suit in which the validity of the order already made is being questioned.

5. ———: ———: ———: ———: **Specific Court Proceeding: Preservation of Status.** The Superintendent of Insurance having made an order reducing the rates being charged by fire insurance companies ten per cent, the companies brought an injunction suit in the circuit court to restrain him from enforcing such order, and the subject of the suit was the power of the Superintendent to cut ten per cent off of the rates then being charged and collected, and the court made an order permitting the companies to collect and retain the ten per cent pending the final determination of the suit, upon giving a refunding bond. An appeal from the order having been taken, the Superintendent thereafter made a second order reducing by fifteen per cent "the rates now being collected," and this order the court enjoined him from enforcing, and the insurance companies contend that the purpose of the first order "was to fix by judicial order the status of insurance rates and to provide that that status should remain unchanged until the final determination of that case." **Held,** (a) that the ten per cent was the res in controversy in the suit and it was in reference to it that the court made its first injunctive order, and the remaining ninety per cent was not involved in that litigation, and it was on that remaining ninety per cent that the Superintendent's second reduction order operated, and it did not and could not violate or conflict with the court's order in respect to the ten per cent; and (b) the court's order to preserve the status unchanged pending the appeal could be made only with the consent of the parties, and there was no such consent, but the stipulation entered into before the first suit was brought dealt solely with the conduct of the parties and the procedure to be observed in the court procedure in that specific case, but if it was their intention by the stipulation to bind the Superintendent not to make a further reduction of rates pending that suit it was to that extent void, and the court's injunctive order based on it was likewise void.

6. ———: ———: **Reduction: Good Faith of Superintendent: Amendment of Statute.** The statute, under which the Superintendent of Insurance made a reduction of ten per cent in insurance rates, having been amended after

the circuit court enjoined the enforcement of such order, and having been so amended as to add new tests of the reasonableness of the rates charged, a second order reducing the rates fifteen per cent, thereafter made by the Superintendent pending an appeal from the injunctive order, cannot be held to have been made in bad faith and to "embarrass, harass and annoy" the insurance companies by drawing away their accountants and actuaries from their usual employment, but he would have been derelict in the performance of his statutory duty if he had not given notice of a hearing for a determination of the reasonableness of such order.

Corpus Juris-Cyc. References: **Actions,** 1 C. J., Section 240, p. 1085, n. 24. **Contempt,** 13 C. J., Section 14, p. 14, n. 17. **Injunctions,** 32 C. J., Section 22, p. 43, n. 9; p. 44, n. 14; Section 867, p. 498, n. 93. **Insurance,** 32 C. J., Section 13, p. 984, n. 57. **Prohibition,** 32 Cyc., p. 604, n. 32; p. 614, n. 2; p. 630, n. 2. **Stipulations,** 36 Cyc., p. 1291, n. 64.

Prohibition.

PROVISIONAL RULE MADE ABSOLUTE.

*John T. Barker* and *Floyd E. Jacobs* for relator.

(1)  The laws compel the Superintendent to make orders regarding fire insurance rates; it was therefore beyond the power of the circuit court to interfere by injunction with the legislative or discretionary power vested by authority of law in him.  State ex rel. v. Stone, 120 Mo. 428; State ex rel. v. Harty, 278 Mo. 685; State v. Court, 168 N. W. 634; In re Sawyer, 124 U. S. 200; Cambria v. Bachmann, 118 S. E. 336; In re Turner, 119 Fed. 231; Milhau v. Sharp, 15 Barb. 227; Mass. v. Mellon, 262 U. S. 447; Snelling v. Whitehead, 269 Fed. 714; Bowles v. Kinney, 292 Fed. 422; People v. Barrett, 203 Ill. 104; Ex parte Hudgings, 249 U. S. 378; State ex rel. v. Milligan, 3 Wash. 144; Tebbetts v. People, 31 Colo. 461; United States v. Railroad, 142 Fed. 176.  (2)  After the injunction was granted complaints were filed with the Insurance Department asking for an adjustment of rates; under such change of conditions it was not a violation of said injunction to make the reduction order in November, 1923.  Railroad v. Dey, 38 Fed. 656; R. S. 1919, sec. 6283; Glover v. Board, 14 S. D. 139, 84 N. W. 761; Mahoney v. Van Winkle, 33 Cal. 458; Pryor v. Lowe, 8 Ga. 230; Allen v. Railroad, 230 U. S. 553; 10 C. J. 436; 13 C. J. 16; 9 Cyc. 11; 25 R. C. L. 1097.  (3)  The injunction granted was to restrain relator from holding a hearing to consider the reasonableness of fire insurance rates.  Until an order was made affecting rates, no injunction should have been granted. Prentis v. Line, 211 U. S. 210; Railroad v. Bartine, 170 Fed. 725; McChord v. Company, 183 U. S. 483; Company v. New Orleans, 164 U. S. 471; Alpers v. San Francisco, 32 Fed. 503; Railroad v. Comm., 175 Ind. 630; Railroad v. Comm., 78 Fed. 236; 10 C. J. 434.  (4)  Relator was not guilty of contempt in refusing to obey an injunction

which the court had no power to grant. In re Letcher, 190 S. W. 19; Railroad v. Wear, 135 Mo. 230; In re Heffron, 179 Mo. App. 652; State v. McQuillin, 260 Mo. 174; Ex parte Ziegenhein, 187 S. W. 893; Bender v. Young, 252 S. W. 691; Ex parte Arnold, 128 Mo. 256; Ex parte Hagan, 245 S. W. 336; Sands v. Richardson, 252 S. W. 994; Windsor v. McVeigh, 93 U. S. 282; Ex parte Lange, 18 Wall. 163; McHenry v. State, 16 L. R. A. (N. S.) 1062; Railroad v. Dey, 38 Fed. 656; People v. Burk, 212 Pac. 847; In re Mead, 190 N. W. 235; State ex rel. v. La Follette, 196 Pac. 412; Ex parte Laughlin, 213 S. W. 154; Cambria v. Bachmann, 118 S. E. 341; 13 C. J. 13, 15, 16; 6 R. C. L. 505. (5) The statutes provide a plain, speedy and adequate remedy for a review of any order made by the Insurance Commissioner and such remedy is exclusive. The injunction granted in July, 1923, was void. Chandler v. Railroad, 251 Mo. 600; State ex rel. v. Hughes, 240 S. W. 802; State ex rel. v. Harty, 278 Mo. 691; City v. Dasher, 120 Mo. 680; Markowitz v. City, 125 Mo. 485; Chicago v. O'Connell, 278 Ill. 591; State ex rel. v. Dearing, 236 S. W. 629; State ex rel. v. Gideon, 237 S. W. 220; State ex rel. v. Wollfolk, 269 Mo. 389; Prentis v. Line, 211 U. S. 210. (6) The notice of a hearing in July, 1923, was not a violation of the stipulation entered into in February, 1922; such stipulation was signed when no litigation was pending and is void. New conditions had arisen and the Insurance Commissioner was under a statutory duty to investigate the reasonableness of fire insurance rates. Stone v. Bank, 174 U. S. 412; Company v. Railroad, 243 U. S. 281; Allen v. Railroad, 230 U. S. 553; 13 C. J. 16; 10 C. J. 436; 25 R. C. L. 1102.

*Bates, Hicks & Folonie, Hogsett & Boyle, Leahy, Saunders & Walther* and *Cockrill & Armistead* for respondent.

(1) The writ of prohibition cannot be made to take the place of an appeal or writ of error. Delaney v. Police Court, 167 Mo. 679; Wand v. Ryan, 166 Mo. 649; Mastin v. Sloan, 98 Mo. 252; State ex rel. v. Johnson, 132 Mo. 109; State ex rel. v. Stobie, 194 Mo. 14; Schubach v. McDonald, 179 Mo. 182; State ex rel. v. McQuillin, 262 Mo. 266. The right of appeal exists to review a judgment for civil contempt. State ex rel. Railroad Co. v. Bland, 189 Mo. 197. (2) The sole questions on prohibition are whether the lower court has jurisdiction, and if it has, whether it is acting in excess of its jurisdiction. The merits of the case below are immaterial. Scarritt Estate Co. v. Johnson, 262 S. W. 377; State ex rel. v. Tracy, 237 Mo. 119; Schubach v. McDonald, 179 Mo. 182; State ex rel. v. McQuillin, 262 Mo. 266, 260 Mo. 176; State ex rel. v. Stobie, 194 Mo. 52; State ex rel. Chase v. Hall, 250 S. W. 64. On prohibition the Supreme Court will not consider the merits of the original ac-

tion in the inferior court. State v. Muench, 225 Mo. 210; State v. Lucas, 236 Mo. 18; State v. Harty, 276 Mo. 583; State v. Ellison, 277 Mo. 294; Willow Springs Creamery Co. v. Produce Co., 197 S. W. 916; State v. Dearing, 180 Mo. 53. (a) A court of equity has jurisdiction upon proper allegations to enjoin a public officer from proceeding under an unconstitutional statute. Carson v. Sullivan, 223 S. W. 571; Ex parte Young, 209 U. S. 123; Truax v. Raich, 239 U. S. 37; Davis v. Los Angeles, 189 U. S. 218; Dobbins v. Los Angeles, 195 U. S. 241; Philadelphia Co. v. Stimson, 223 U. S. 620; W. U. Tel. Co. v. Andrews, 216 U. S. 165; Carroll v. Greenwich Ins. Co., 199 U. S. 409; Smyth v. Ames, 169 U. S. 518; State v. Hall, 250 S. W. 65; Merchants Exchange v. Knott, 212 Mo. 647; Sylvester Coal Co. v. St. Louis, 130 Mo. 328; Jewel Tea Co. v. Carthage, 257 Mo. 391; State ex rel. Hughlett v. Hughes, 104 Mo. 459; Griesedieck v. Moore, 262 Fed. 582. (b) The allegations of unconstitutionality of Section 6283 (Laws 1923, p. 234), appearing in the petition in the Agricultural case, were sufficient to give the circuit court jurisdiction to judicially consider that issue, arrive at a conclusion upon it, and issue the temporary injunction based thereon. The question in this prohibition proceeding is not whether the circuit court decided the constitutional question correctly or incorrectly, but whether that court had jurisdiction to decide the question at all. State ex rel. v. Stobie, 194 Mo. 45; State ex rel. Coonley v. Hall, 296 Mo. 210; State ex rel. v. Riley, 203 Mo. 192. On prohibition this court will assume that a statute, attacked in the inferior court as unconstitutional, may be so. State ex rel. Chase v. Hall, 250 S. W. 65. The Rating Act of 1923 unconstitutionally interferes with the insurance companies' inherent right of internal management. State ex rel. v. Pub. Serv. Comm., 262 U. S. 288; Railway Co. v. Smith, 173 U. S. 690; Railroad Co. v. Wisconsin, 238 U. S. 501; Interstate Commerce Comm. v. Chicago Great Western, 209 U. S. 118; Welch v. Casualty Co., 1915E, L. R. A. 708; Lochner v. New York, 198 U. S. 45; People ex rel. v. Stevens, 203 N. Y. 20. The Rating Act of 1923 unconstitutionally applies the investment profits of the insurance companies to a reduction of insurance rates. Smyth v. Ames, 169 U. S. 540; Minnesota Rate Case, 230 U. S. 352; State ex rel. Case v. Pub. Serv. Comm., 249 S. W. 962; Hackworth v. Railroad Co., 286 Mo. 282; Northern Pacific Ry. Co. v. North Dakota, 236 U. S. 595. The Rating Act of 1923 unconstitutionally delegates to the Superintendent of Insurance the administration of legislative power without prescribing any rule or standard for his guidance in the exercise of such power. Zucht v. King, 257 U. S. 650; Welch v. Maryland Cas. Co., 57 L. R. A. (N. S.) 708, 147 Pac. 1046; Yick Wo v. Hopkins, 118 U. S. 356; State v. Buller, 105 Me. 91; Nalley v. Ins. Co., 250 Mo. 452. (c) The stipulation of February 14, 1922, justified

the circuit court in entertaining jurisdiction to issue the temporary injunction. Resolute good faith should characterize the conduct of state officials in their agreements, and there is no reason in law or morals that will exempt them from the doctrine of estoppel. State v. Railroad, 89 Mich. 481; 10 R. C. L. 704; Commonwealth v. Andre, 3 Pick. 224; Com. v. Proprietors, 10 Mass. 155; State v. Railroad, 29 Mich. 481; United States v. Military Road Co., 41 Fed. 493; Trott v. State, 171 N. W. (N. D.) 827. The stipulation was binding upon the superintendent. North Missouri Railroad v. Stephens, 36 Mo. 150; Scarritt Furniture Co. v. Moser, 48 Mo. App. 543; Barlow v. Steel, 65 Mo. 611; Davis v. Hall, 90 Mo. 659; Monk v. Wabash Railroad, 166 Mo. App. 703; Union Bank v. Geary, 5 Peters (U. S.) 99; Stone v. Bank of Commerce, 174 U. S. 412; McCann v. McLennan, 3 Neb. 25; Staples v. Parker, 41 Barb. (N. Y.) 648. The stipulation was entered into during the pendency of the suit to review the rate reduction order of January 5, 1922. The enactment of the 1923 Rating Law did not vitiate the stipulation, for there is no inconsistency between the stipulation and the new statute. Section 6283, Laws 1923, p. 234. (d) The Superintendent's threatened action in holding a hearing and reducing rates would have been a violation of the order of November 10, 1922, made by the Circuit Court in the Aetna case in pursuance of the stipulation, and this gave the court jurisdiction to issue the injunction. The order of November 10th was made by agreement, and no exception was saved thereto, and after the lapse of the term the order became absolutely binding upon all parties to the suit. State ex rel. v. Fort, 178 Mo. 523. (e) The bad faith of the Superintendent alleged in the petition in the Agricultural case was sufficient to give the court jurisdiction to issue the temporary injunction. 22 Cyc. 879, 880; Gravesend v. Curtis, 34 How. Pr. (N. Y.) 261; Enterprise Savings Assn. v. Zumstein, 67 Fed. 1000; W. U. Tel. Co. v. Mayor, 38 Fed. 552; Stuckey v. Jones, 240 S. W. 565. (3) The remedy of review given by Section 6284 is not exclusive, and did not destroy the fundamental right to apply to a court of equity for injunctive relief. State ex rel. v. Harty, 278 Mo. 691; Southern Ry. Co. v. Moore, 26 L. R. A. (N. S.) 851; Chavez v. Myer, 6 L. R. A. (N. S.) 793; Sullivan v. Ry. Co., 45 L. R. A. (N. S.) 612; Texas v. Abilene Cotton Oil Co., 204 U. S. 426.

RAGLAND, J.—This case comes to the writer for an opinion on a *second re-assignment*. It is an original proceeding in prohibition. The Circuit Court of Cole County, on July 19, 1923, in a suit then pending before it entitled, Agricultural Insurance Company et al., plaintiffs, v. Ben C. Hyde, Superintendent of the Insurance Department of the State of Missouri, defendant, granted a temporary in-

junction of the following tenor: "It is by the court ordered that the defendant Ben C. Hyde, Superintendent of Insurance Department of the State of Missouri, be, and he is hereby, restrained, until the further order of this court, from holding a hearing on July 26, 1923, or at any time thereafter, to consider a reduction by him in the rates of premium charged by the stock fire insurance companies in this State; and from making, or attempting to make, any order reducing the rates of prem.um charged by said companies in this State."

Thereafter on November 9, 1923, the defendant in said suit (relator in this) promulgated the following order:

"To Missouri Inspection Bureau, Waterworth & Terry, Managers, Pierce Building, St. Louis, Missouri, and to all Stock Fire, Lightning, Hail and Windstorm Insurance Companies doing business in the State of Missouri:

"Upon complaint filed with me that there should be a reduction in the rates charged by the stock fire insurance companies doing a fire, lightning, hail and windstorm insurance business in the State of Missouri, and upon full investigation and hearings and in full compliance with the laws of Missouri, it appears to me that the rates charged in this State by the stock fire insurance companies, for the five years next preceding such investigation, to-wit, the years 1918 to 1922, inclusive, are producing a profit in excess of what is reasonable.

"Accordingly, you and each of you are hereby notified that I have this day ordered a reduction of fifteen per cent in rates now authorized by the Missouri Inspection Bureau and being collected by the aforesaid companies on fire, lightning, hail and windstorm business written in the State of Missouri, which reduction in my judgment will leave said companies a reasonable profit after giving proper and reasonable consideration to the conflagration liability both within and without the State.

"The aforesaid reduction order shall take effect and be in operation on and after the 15th day of December, 1923, and shall be applied subject to the approval of the Superintendent of Insurance. If the companies do not within thirty days from this order of reduction submit a classification or classifications, which meets the approval of the Superintendent of Insurance, the Superintendent will apply such reduction in such manner as appears to him to be just and equitable.

"BEN C. HYDE,

"Superintendent of Insurance of the State of Missour'."

Thereafter on November 16, 1923, at the instance of the plaintiffs in said cause. the defendant was cited to show cause why he should not be punished as for a contempt. After a hearing with respect

thereto the court made a finding and entered judgment, which so far as material here was as follows:

"The court further finds that the making by the defendant of his said order of November 9, 1923, was and is a direct, willful, intentional and contemptuous violation by the defendant of the aforesaid temporary restraining order and the aforesaid temporary injunction issued in this cause by this court, and that the act of said defendant in making, issuing and promulgating said order of November 9, 1923, constitutes a contempt of said temporary restraining order and said temporary injunction, and a contempt of this court; and that said act of the defendant in issuing said order of November 9, 1923, constitutes resistance wilfully offered by him to the lawful orders of this court aforesaid, and directly tends to impair the respect due to the authority of this court.

"Wherefore, it is by the court considered, ordered and adjudged that the said defendant is now guilty of contempt of this court in each and all of the respects aforesaid, and that the defendant Ben C. Hyde individually be and he is hereby fined in the sum of one hundred dollars, payable December 26, 1923, and in the further sum of one hundred dollars payable on each day thereafter, until the defendant, Ben C. Hyde, shall in writing, revoke and withdraw his aforesaid order of November 9, 1923, and shall file with the clerk of this court a copy of his order of revocation, duly verified by himself; and

"It is by the court further considered, ordered and adjudged that the State of Missouri have and recover of and from the said defendant Ben C. Hyde, individually the sum of one hundred dollars on December 26, 1923, and the further sum of one hundred dollars on each day thereafter until the defendant shall, in writing, revoke and withdraw his aforesaid order of November 9, 1923, and shall file with the clerk of this court a copy of his order of revocation, duly verified by himself; and that execution issue against the defendant Ben C. Hyde, individually, in accordance with this judgment."

This proceeding was instituted by relator to prohibit respondent as judge of the Cole Circuit Court from enforcing the aforesaid judgment.

For a statement of the facts pleaded in the petition in the suit of Agricultural Insurance Company v. Hyde, and the relief, based on those facts, which the plaintiffs in that case sought, we adopt that of respondent's counsel, setting out in full, however, the stipulation and court order therein referred to. The statement follows:

"That on January 5, 1922, the relator Hyde, acting as Superintendent of Insurance, ordered a fifteen per cent reduction, effective February 15, 1922, in the rates of premiums charged by stock fire

insurance companies, on fire, lightning, hail and windstorm insurance in Missouri.

"That on February 4, 1922, one hundred and forty-nine stock fire insurance companies filed in the Circuit Court of Cole County their suit in equity to enjoin Mr. Hyde from carrying out the provisions of said order, and in such suit said court issued a temporary restraining order. restraining the Superintendent accordingly.

"That on February 14, 1922, the insurance companies and Mr. Hyde entered into a certain stipulation in said suit as follows:

" '1.   The above entitled cause is hereby dismissed, and the restraining order heretofore entered therein is hereby dissolved, and all liability under the bond given pursuant to the conditions of said restraining order is hereby satisfied and discharged, and the surety on said bond is hereby released.

" '2.   It is further stipulated and agreed that the said Superintendent of the Insurance Department, defendant herein, may not earlier than March 15, 1922, call a hearing to investigate the necessity for a reduction in rates charged by the stock fire insurance companies doing a fire, lightning, hail and windstorm insurance business in this State; that at such hearing, if and when called, the stock fire insurance companies will appear by counsel and will produce such evidence as may be required by the Insurance Department, or as they may see fit to present, bearing upon such question; that at such hearing the experience of said companies in the State of Missouri for the year 1921 shall be offered in evidence and considered by the Superintendent of the Insurance Department, together with such other evidence as may be offered in reaching his determination; that at the conclusion of such hearing the Superintendent of the Insurance Department will make findings of fact and announce his determination thereon, and that he shall, in writing, find all essential, material and competent matters of fact disclosed by the evidence, that he shall make the following findings:

" '(a)   What was the profit of said stock fire insurance companies during the five years preceding said investigation, including the year 1921?

" '(b)   What is a reasonable profit on the business written in this State?

" '(c)   What per cent of premiums received is allowed for the conflagration hazard?

" '(d)   What is the basis upon which earnings in Missouri should be determined and ascertained?

" '(e)   What is the ratio of expenses incurred to premiums earned in this State during said period?

" '(f)   What is the ratio of losses incurred to premiums earned in this State during said period?

" '(g)   What is the total amount of earned premiums during said period?

" '3.   That if, based upon such findings of fact and the determination of the Superintendent of the Insurance Department, an order reducing the rates charged by such stock companies on all fire, lightning, hail and windstorm insurance business written by them in the State of Missouri be made by said Superintendent of the Insurance Department such order shall apply to all classes alike, and the said insurance companies, if dissatisfied with said order, will proceed to secure a review thereof by the trial *de novo* in the Circuit Court of Cole County, Missouri.

" '4.   That no injunction shall be applied for in said matter restraining the enforcement of said order, but pending such review and until the final determination of said cause in whatever court it may be finally lodged the rates in force prior to the making of such order shall be collected by such insurance companies, and such insurance companies shall give bond, conditioned and in such amount as the court may direct, to refund to the assured any excess of premiums collected by them if such order of the Superintendent of the Insurance Department be finally sustained by decree or judgment of a court of last resort.

" '5.   That in such matter the question of the constitutionality of Sections 6283 and 6284, Revised Statutes of Missouri, 1919, shall not be raised, nor shall the legality of the hearing above provided for be questioned.'

"That on May 31, 1922, a hearing was had before the Superintendent of Insurance to investigate the necessity of a reduction in rates, and on October 9, 1922, the defendant made an order reducing rates ten per cent to be effective November 15th following.

"That on November 10, 1922, plaintiffs filed in said circuit court their suit in equity entitled Aetna Insurance Company et al. v. Hyde, No. 4566 (hereinafter referred to as the Aetna case), to review said reduction order of October 9th, and to have the same cancelled and set aside by decree and judgment of said circuit court:

"That on the same day, November 10, 1922, said circuit court made an order in the Aetna case as follows:

" 'And it appearing to the court that the plaintiffs and defendant have stipulated and agreed in writing that no injunction shall be applied for by plaintiffs restraining the enforcement of said rate reduction order, and that pending the review of said order and until the final determination of this suit, in whatever court it may be finally lodged, the rates of premium in force prior to the making of such order shall be collected by plaintiffs, and that plaintiffs shall give bond, conditioned and in such amount as this court may direct, to refund to the assured any excess of premiums collected by them

if such order should be finally sustained by a final decree of court; and it further appearing to the court that said stipulation and agreement is reasonable and just and is binding upon the parties hereto.

" 'Now, therefore, it is by the court ordered that the plaintiffs be and they are hereby authorized, pending the review of said order and until the final determination of this suit, to collect the rates of premium in force prior to the making of said rate reduction order; provided, plaintiffs shall within five days from this date give bond, with terms and security to be approved by this court, or the judge thereof, in vacation, in the sum of five hundred thousand dollars, to the defendant herein, for the use and benefit of all persons, firms and corporations to whom policies of fire, lightning, hail and windstorm insurance covering property in this State may be issued by plaintiffs or any of them, on and after November 15, 1922, and prior to the entry of final decree in this cause, cond'tioned that if said rate reduction order should be finally sustained by a final decree of court, then that each of the plaintiff insurance companies shall send notice by mail forthwith to each assured entitled to a refund of premium, as shown by its books, stating the amount of refund due; and shall refund, within thirty days after its receipt of written demand by the party entitled thereto, the difference between the amount collected by such plaintiff as premium upon each policy of fire, lightning, hail and windstorm insurance, issued by such plaintiff between November 15, 1922, and the date of such final decree, covering property in this State, and the sum which such plaintiff would be entitled to collect as premium upon such policy according to the terms of said rate reduction order, demand for such refund to be made in writing either upon an authorized agent in this State of the company from whom such refund is due, or upon the Superintendent of the Insurance Department of this State, within ninety days after the sending of such notice.

" 'The court hereby reserves to itself the power, in the subsequent progress of this cause, to require of plaintiffs additional bond, if in the judgment of the court the circumstances so require, and to cancel the bond herein required and in lieu thereof require a bond in such reduced amount as to the court may seem proper.

" 'And now come plaintiffs and present to the court their bond in the amount and with the conditions aforesaid, and said bond is now by the court approved, and said bond is now filed herein.'

"That thereafter, in due time, the Superintendent of Insurance filed his answer and plaintiffs filed their reply in said Aetna case, and the cause was, by agreement of the parties, referred to the Honorable John I. Williamson as referee to hear the evidence and report to said circuit court his findings of fact and conclusions of law.

"That thereafter, on June 4, 1923, the taking of testimony in the Aetna case began before the referee. That the taking of testimony had not been concluded, but was still in progress and would not be concluded for several months. That the Aetna case was therefore still pending and undetermined in said circuit court.

"That thereafter, on July 9, 1923, while the hearing in the Aetna case was actually in progress and testimony being heard therein, the Superintendent of Insurance issued a notice to the insurance companies doing business in Missouri stating that he was of the opinion that the rates charged by the companies were excessive and that another reduction (this time of fifteen per cent) should be made pursuant to Section 6283, as amended (Laws 1923, page 234), and notifying the insurance companies to appear before him at Jefferson City on July 26, 1923, and produce their records and figures and to give oral testimony showing why the fifteen per cent reduction should not be made.

"That unless the Superintendent of Insurance were restrained by said circuit court, he would proceed to hold such hearing and to make an order reducing rates fifteen per cent; that this would work irreparable injury to the plaintiffs, in that they would be compelled to employ counsel to represent them in such hearing and to bring from distant states a great number of witnesses and many books and records, and to make proof before the Superintendent of Insurance at such hearing showing why such reduction should not be made. That they would suffer further irreparable damages in this: that they had at great cost and expense given bond in the Aetna case in the sum of $500,000, conditioned as provided by the aforesaid stipulation and order of November 10, 1922; and that if defendant should hold said hearing and order such reduction, the plaintiffs would be compelled during the pendency of any action to review such order, to deposit with the Superintendent the difference in premiums, as provided by the amended Rating Act (Laws 1923, p. 234), and that therefore plaintiffs would be required to deposit funds respecting which they had already at great cost given the $500,000 bond. That all expenses which would be suffered and imposed upon the insurance companies by the holding of such threatened hearing and the making of such fifteen per cent reduction order would be irrecoverable and wholly lost to plaintiffs, and would therefore result in irreparable injury and damage to them.

"That plaintiffs would suffer further irreparable injury and damage in that, if the Superintendent made a fifteen per cent reduction order, as threatened, plaintiffs would be compelled to do business in Missouri at great loss, and would be compelled to either comply with the reduction order and write insurance at a loss, or cease writing insurance in Missouri entirely, in which latter case they would lose

large sums of money expended by them in the establishment of their agency plants and business, and that their business and good will in Missouri would in such case be wholly destroyed.

"The plaintiffs in their petition prayed that the Superintendent be enjoined from holding the threatened hearing and from making the threatened order reducing rates. The grounds upon which the relief was sought were four in number: (a) that the Superintendent's conduct in holding a hearing and in reducing rates would be in direct conflict with the *stipulation* which he had solemnly entered into with the insurance companies on February 14, 1922; and (b) in conflict with the *order of the circuit court* of November 10th, in the Aetna case above referred to; (c) that the amended statute of 1923 (Sec. 6283 as amended, Laws 1923, p. 234) is *unconstitutional and void* in several respects, for reasons in said petition more particularly set forth; and (d) that the Superintendent in proceeding to hold a hearing and to further reduce rates was acting in bad faith."

I. Prohibition cannot be invoked to serve the purpose of an appeal or writ of error. It lies only where an inferior court is proceeding without jurisdiction, or in excess of its jurisdiction. The primary question for determination in this case is whether the circuit court was invested with jurisdiction to make the order for a violation of which it adjudged relator guilty of contempt. If the order was void because beyond the power of the court to make it, relator cannot be punished for violating it. [In re Letcher, 269 Mo. 140; Ex parte Rowland, 104 U. S. 604.]

**Prohibition.**

"Whether the circuit court was without jurisdiction altogether, or having jurisdiction of the class of cases in which the injunction was sought it exceeded its jurisdiction, is only ascertainable in this case by the averments in the bill filed in that court and the orders made thereon. The fact that said court was a court of general equity jurisdiction and has the power to issue or direct writs of injunction to issue, will not of itself answer the contention made in this case. Courts of equity are not invested with power to enjoin in any and every case but there must be some special circumstances bringing the case under some recognized head of equity jurisdiction before it will wield the powerful writ of an injunction." [State ex rel. v. Wood, 155 Mo. 425.]

The petition in the action out of which the contempt proceeding grew predicated plaintiffs' right to injunctive relief on the grounds: (1) That the statute under which the Superintendent of Insurance claimed authority to hold a hearing and make a rate reduction order is unconstitutional; (2) that the holding of such a hearing and the making of such an order would violate: (a) the stipulation entered into between the Superintendent and the insurance companies on

February 14, 1922, and (b) the order of the circuit court made in the Aetna case November 10, 1923; and (3) that the Superintendent in proceeding to hold the hearing and to further reduce rates was acting in bad faith. These will be considered in the order named in the succeeding paragraphs.

II. The petition in the injunction proceeding alleged: "That Section 6283 of the aforesaid statute, enacted at the session of 1923 (Laws 1923, page 234), which statute constitutes

**Injunction: Unconstitutional Statute.** the sole and only authority under which the defendant is acting in issuing the aforesaid notice of July 9, 1923, and in proposing to hold said hearing on July 26, 1923, is unreasonable, arbitrary, confiscatory, unconstitutional and void."

It then alleged with great particularity, under ten different heads, the respects in which it violates specific provisions of both the State and Federal Constitutions. The unconstitutionality of the statute was unquestionably well pleaded. It must therefore be assumed for the purposes of the present case that the statute is unconstitutional (State ex rel. v. Hall, 297 Mo. 594); and consequently that the rate reduction order made pursuant to its provisions was a nullity. But the announced intention of the Superintendent of Insurance to make a void rate-reduction order fell far short of entitling the insurance companies to injunctive relief. [State ex rel. v. Wood, supra.] It must have been made to appear that injury was threatened or iminent or was in all probability about to be inflicted. [1 High on Injunction, sec. 22.] Now a void-rate reduction order is of itself entirely harmless. Only the enforcement or compulsory observance of such an order can produce injury.

Under Article 8, Chapter 50, Revised Statutes 1919, of which Section 6283 is a part, the making of insurance rates is left with the insurance companies or the actuarial bureaus of which they are members. The Superintendent of Insurance is given no authority to prescribe or regulate rates. The only power which the statute purports to confer upon him is to veto the raising of rates or to order a reduction of rates, "if, upon investigation, it appears that the rates charged, . . . are producing a profit in excess of what is reasonable." With respect to such a reduction order the statute contains no specific provisions for its enforcement. The insurance companies are not commanded to make their public rating records conform to it; they are not, in terms at least, prohibited from thereafter charging rates in excess of those fixed by the order. Nor is there any express provision making it unlawful to charge and collect the rates as they stood prior to the making of the order. If it can be held that the charging of greater rates than those fixed by the

reduction order made by the Superintendent of Insurance is by intendment of the statute unlawful or in violation of its provisions, then an insurance company so offending might be subject to prosecution for a misdemeanor, or its license might in the discretion of the Superintendent of Insurance be revoked. [Sec. 6287, R. S. 1919.] But if a failure to conform its rates to a void reduction order were made the basis of a criminal prosecution, the company would have an adequate remedy at law; if because of such failure the Superintendent of Insurance threatened or attempted to revoke its license to do business, an injunction would lie. But the making of such an order, without more, does not constitute, directly or indirectly, a trespass upon the property rights of the insurance companies, nor does it effect an invasion of their rights in any respect. It cannot therefore be a ground for injunctive relief.

III. (a) The stipulation of February 14, 1922, shows conclusively that the parties thereto had in contemplation the making of a new rate reduction order by the Superintendent of Insurance and the institution by the insurance companies of a new suit in the circuit court to review such order when made. After providing for the final disposition of the cause in which it was filed, the stipulation dealt solely with the new order and the new court proceeding to review it which the parties then had in mind. The agreement conferred no new powers on the Superintendent of Insurance with respect to making a rate reduction order; it gave the insurance companies no additional right in respect to having such an order reviewed in a court of competent jurisdiction. The essence of the agreement was clearly this: The insurance companies waived their right to question the constitutionality of Section 6283, as it then stood, and the Superintendent of Insurance consented that the companies might continue, pending the new suit, to charge and collect the rates as they were at the time of the making of the reduction order, upon giving a refunding bond. [Section 6284 then provided: "During the pendency of such action or review each insurance company or other insurer shall not charge any rate or premium in excess of that fixed by the Superintendent of Insurance."] On October 9, 1922, the new reduction order (of ten per cent) was made by the Superintendent of Insurance, and on November 10, 1922, the insurance companies instituted a suit in the Cole County Circuit Court to set it aside. This order and this suit were evidently the ones which the parties to the stipulation had in contemplation on February 14, 1922, and the ones with reference to which they stipulated, for at the very inception of the suit the court, with the consent of the parties, entered an order (heretofore set out) embodying what we have termed the essence of the agreement,

*Stipulation: Further Reduction.*

In the subsequent conduct of *that proceeding* the terms of the stipulation have, so far as appears, been observed in good faith on both sides.

The ten per cent reduction order of October 9, 1922, was never revoked by the Superintendent of Insurance; it was not suspended or superseded by the institution of the suit to cancel and set it aside. Notwithstanding the pendency of such action it was in full force and effect on November 9, 1923, when the fifteen per cent reduction order was made. The latter order read: "I have this day ordered a reduction of fifteen per cent in rates now authorized by the Missouri Inspection Bureau and being collected by the aforesaid [insurance] companies." It did not in terms displace the order of October 9, 1922; in legal contemplation it did not do so. It effected, if anything, another and further reduction—to the extent of five per cent— in the rates. It was therefore a distinct and independent order, having no relation to or bearing upon the order then under review in the Aetna case.

The stipulation of February 14, 1922, does not in terms provide that the Superintendent of Insurance after having made one reduction order shall not thereafter, or during the pendency of the action to review the one made, make another having for its purpose a further reduction of rates. Nor can such a provision, in our opinion, be read into it under the most liberal rules of construction. But if so, it is void. The Superintendent of Insurance cannot so bind himself. The conditions prescribed by the statute are alone determinative of his duty and authority in the premises. This proposition is so evident that the citation of authority is deemed unnecessary.

(b) The subject of the action in the Aetna case was the rate reduction order of October 9, 1922. Specifically, the power of the Superintendent of Insurance to cut ten per cent off of the rates then being charged and collected by the insurance companies. This ten per cent was the *res* in controversy and with respect to *that* the court made the order, permitting the companies to collect and retain it pending the action, upon giving a refunding bond. Of course the remaining ninety per cent of the rates was not involved in the litigation, and it was upon this ninety per cent that the Superintendent's second reduction order operated. That order therefore did not, and could not, violate or conflict in any respect with the court's order with reference to the ten per cent.

Respondent's counsel (the attorneys for the insurance companies) say that the obvious purpose of the court in making the order in the Aetna case "was to fix by judicial order the status of insurance rates in Missouri, and to provide that that status should remain unchanged until the final determination of that case." A valid court order of

the character of the one under consideration could be made only with the consent of the parties. The one in question shows on its face that it rests upon the stipulation of February 14, 1922. That agreement as we have endeavored to show did not attempt to fix "the status of insurance rates;" it dealt solely with the conduct of the parties and the procedure to be observed in a *specific court proceeding*. But if it was the intention of the parties to the stipulation to thereby tie the hands of the Superintendent of Insurance so that he could not in any event order a further reduction of rates, during the pendency of the then contemplated suit (the Aetna case has already been pending in the courts four years and is still undisposed of), then the agreement in that respect was void, and a court order based on it is to that extent likewise void.

IV. We come now to consider the last ground on which the petition for the injunction predicated a right to that relief, namely, the bad faith of the Superintendent of Insurance in making the second reduction order. The allegations of the bill relating directly thereto were as follows:

"Plaintiffs further state that the defendant has been in attendance at many hearings held before the honorable referee heretofore appointed by this honorable court to review the action of the said defendant in his order of October 9, 1922; that the defendant knows that the expert accountants, rating men and other agencies of the plaintiffs have been in attendance at the hearings held before the said referee and that by their absence have thus disorganized the various departments of the business of plaintiffs, and in order to further disorganize their business and to embarrass, harass and annoy the plaintiffs, the defendant has given the said notice of a further hearing to be held as aforesaid."

Neither the facts alleged in the portion of the bill which we have just quoted, nor those alleged in the bill as a whole, warrant the conclusion that the Superintendent of Insurance gave the second notice for a hearing with a view to making a further reduction in rates "in order to . . . embarrass, harass and annoy the plaintiffs." In 1923, Section 6283, pursuant to which the reduction order under review in the Aetna case was made, was amended by the incorporation therein of a provision that in determining the question of rates and profits the Superintendent of Insurance should take into consideration "the acquisition cost and administration expenses of such companies, and all earnings of such companies, including investment profits," and should also consider, "whether or not the underwriting activities of such companies are conducted on a reasonably economical basis." [Laws 1923, pp. 234-5.] Upon the going into effect of this amendatory statute, making investment prof-

its and economical conduct of business factors in determining what rates would yield a reasonable profit, the Superintendent of Insurance could well have reached the conclusion that a further reduct'on in rates was probably necessary. And having reached that conclusion he would have been derelict in the performance of his statutory duty if he had not given notice of a hearing for a determination of that matter. This notwithstanding that the insurance companies would be put to trouble and expense thereby.

At the risk of having it regarded as a pure gratuity on our part by the able counsel who have conducted the litigation of which this proceeding is a part, we venture this suggestion: A suit brought in the Cole County Circuit Court to review the second reduction order, involving in part, as it would have, the same inquiries as to fact, and covering in part the same period of time, as the Aetna case, could have been consolidated with that case, or at least evidence in the two cases could have been heard at the same sittings of the court or referee. The fact that constitutional questions might have inhered in the second that were not in the first would not have been an insuperable objection to such a consolidation, or joint hearing.

In view of the foregoing we conclude that the petition under review did not "state a case belonging to a class in which courts of equity are authorized to grant injunctive relief." [State ex rel. v. Wood, supra, l. c. 445.] The restraining order based upon it was therefore void. It follows as a further corollary that the circuit court was without authority to punish relator for violating it.

Our provisional rule heretofore issued is made absolute and a writ in conformity therewith is awarded. All concur, except *Graves, J.,* absent.