STATE OF MISSOURI at the relation of HENRY S. CAULFIELD, Relator, v. EUGENE J. SARTORIUS, Judge of the Circuit Court of the City of St. Louis.—130 S. W. (2d) 541.

Court en Banc, July 5, 1939.

920

*McDonald, Bartlett & Muldoon, Jesse McDonald, Daniel Bartlett* and *Thomas Muldoon* for relator.

*James T. Blair, Roberts P. Elam, J. Porter Henry* and *Hyman G. Stein* for respondent.

CLARK, J.—Original proceeding by Henry S. Caulfield, relator, seeking to prohibit respondent, as a Judge of the Circuit Court of the

City of St. Louis, from enforcing an order made by him undertaking to remove relator as co-trustee. Our preliminary rule was issued on relator's amended petition. Respondent filed return and the parties, by leave of this court, filed a stipulation as to certain facts; whereupon relator filed motion for judgment on the pleadings and stipulation. The motion is equivalent to a request for the issuance of a permanent writ, notwithstanding the return, and therefore admits all well pleaded allegations of the return as affected or modified by the stipulation.

Relator's motion for judgment alleges that respondent circuit judge lacked jurisdiction to remove relator because:

(1) The motion, upon which respondent based said order, wholly failed to state facts which would justify such removal.

(2) Respondent's finding of facts, set forth in the order of removal, does not justify such removal.

(3) Notice of the motion to remove, sufficient to constitute due process, was not given to necessary parties.

(4) There was and is pending in, and undisposed of by, the circuit court, a prior motion seeking such removal.

From the stipulation, respondent's return and the allegations of relator's petition admitted in said return, we glean the facts as follows: On January 3, 1922, the First National Company, a corporation (hereafter referred to as the Company), entered into an agreement with the First National Bank, a banking corporation, (hereafter referred to as the Bank) whereby the Bank was to act as trustee and hold securities, owned by the Company, in trust to secure participation certificates issued and to be issued and sold by the Company. These certifiecates were issued in various amounts and the Company agreed to pay interest on them and repurchase on maturity at the face amount. The trust agreement provided that the Company could substitute securities with the bank, provided the amount of securities in the trust fund should at least equal the amount of outstanding certificates. Upon default, the bank could sell part or all the securities and pay the proceeds prorate to the certificate holders. On May 1, 1933, the trust fund consisted of securities of the face value of $9,715,616.89 and there were outstanding certificates of the face amount of $9,577,503.97. On that date the Company defaulted in the payment of interest and repurchase of certificates; announced it could no longer meet its obligations and that a committee had been formed for the protection of the rights of certificate holders. Shortly thereafter a number of suits were filed by certificate holders against the Company, the Bank and the Committee. Each of these was brought as a "class" suit. There were other interventions and cross petitions filed. Some of the suits requested the removal of the bank as trustee, the appointment of a new trustee or receiver, and the liquidation of the company. Some alleged that the Company was an affiliate of the

Bank and owned by the stockholders of the bank; that the Bank had mismanaged the trust fund and had permitted inferior securities to be substituted for sound securities and an accounting was demanded. The Bank filed general denials to all the petitions and cross petitions. On July 24, 1933, all said suits were consolidated by stipulation, and the Bank filed a cross petition alleging, among other things, the following:

"And this cross-petitioner, by its counsel, while denying all such allegations, has suggested and here suggests that in order to prevent delay, obviate unnecessary expense and unnecessary litigation and prevent any further criticism, an individual co-trustee of unquestionable standing in the community, in the person of Henry S. Caulfield, be appointed by this Honorable Court to act as co-trustee with this cross-petitioner in directing the handling and realizing of said securities, the possession and custody of said securities and the funds realized therefrom to remain with this cross-petitioner, as trustee. And this cross-petitioner has suggested and does hereby suggest that this be done, with the understanding and on the condition that this cross-petitioner, without compensation to itself, through its officers and employees, will undertake, at the expense of this cross-petitioner, all the details of such liquidation and, upon the further condition, and because of the fact that this cross-petitioner has in order to allay such criticism and possible fears suggested the appointment of such co-trustee, that this cross-petitioner pay the monthly compensation of such co-trustee, which said monthly compensation of said co-trustee shall be $500.00 per month and be subject to such change from time to time as the Court may, in its discretion, see fit to make, as the securities are realized and the proceeds thereof distributed to the participation holders."

On said July 24, 1933, the circuit court entered a decree which, after reciting the appearance of parties and various other matters and expressly denying the motion to remove the Bank as trustee and to appoint a receiver, contained the following:

"4. At the request of defendant First National Bank in St. Louis, and with the consent of all of the other parties hereto, Henry S. Caulfield be and he is hereby appointed co-trustee with the First National Bank in St. Louis in the administration of the trust herein referred to and is vested, jointly with said First National Bank in St. Louis, with the titles, powers and duties from and after this date with respect to said securities and funds, constituting the trust fund herein, as though he were named as co-trustee in the aforesaid contract of deposit or trust agreement, bearing date of January 3, 1922. The physical custody of such securities and the funds realized therefrom is to remain with the First National Bank in St. Louis, as such trustee, and such co-trustee, in view of this fact, is to act without bond. The said co-trustee shall receive as compensation for his services the sum

of $500.00 per month, subject to change from time to time as the Court may deem proper, with the liquidation of the securities and the distribution of the proceeds thereof.

"5. At the instance and request of the First National Bank in St. Louis, the First National Bank in St. Louis, as trustee, shall serve as such trustee without any charge or compensation whatsoever, and without any charge to the trust estate on account of any expense incurred by the First National Bank in St. Louis in the performance of its duty through its officers and employees in connection with the trust fund, and shall also bear the expenses incident to the appointment and service of the co-trustee."

The decree further provided that, before entering upon his duties as co-trustee, relator should file his written acceptance; outlined the powers of the trustees in very broad terms and stated that "the trustee and co-trustee have and are hereby vested with the same powers and discretion they would possess and enjoy if they were owners instead of trustees."

The relator, Caulfield, filed his written acceptance and entered upon the discharge of his duties as such co-trustee. Later, by approval of the circuit court, and, on appeal, by this court (338 Mo. 417, 90 S. W. (2d) 776), the Company and the trustees procured a large loan from the Reconstruction Finance Corporation. Most of the trust assets were turned over to the Reconstruction Finance Corporation as security for the loan, but the Bank and relator, as co-trustee, continued to perform various duties in connection with the trust, and from time to time applied to the court for orders, made reports, etc.

After the approval of said loan, the attorney for M. Lazarus Seigle, Sarah Seigle and Cecelia Seigle (owners of certificates of the face amount of $7500) procured the allowance of an attorney's fee in the sum of $30,000, the order of allowance not being made by respondent, but by another judge presiding over said court. This allowance was opposed by the Bank and the relator. On August 2, 1937, said attorney filed a motion to remove said Bank and relator as trustees, alleging among other things their action in opposing the allowance of said fee and refusal to pay the same. This motion is undisposed of.

On March 16, 1938, the Seigles (later joined by another person holding certificates to the face value of $10,000) filed a motion seeking the removal of relator as co-trustee and the appointment of a successor. This motion, after a lengthy recital of various steps in the proceedings, alleged: that several of the petitions filed in the cause had charged the bank with gross mismanagement of the trust prior to the appointment of relator as co-trustee; that it was the duty of relator to assist in recovering from the Bank any loss due to its alleged mismanagement; that relator had taken no action to compel the Bank to account; that, in addition to his monthly compensation, relator had received from the Bank in September, 1936, the

sum of $10,000 without making application to or receiving permission from the court therefor; that this placed relator under obligation to the Bank and impaired his independence; that in June, 1937, the movants had filed exceptions to a report of the trustees in which the movants had demanded an accounting by the Bank for its alleged misconduct (prior to relator's appointment); that relator had joined in a motion to strike out said exceptions.

This motion was heard in April, 1938, and decided by respondent on September 19, 1938. No process was issued on this motion, but the motion was docketed pursuant to the rules of the court and notice thereof was published in the Daily Record, the official newspaper of the court; at the hearing on the motion, relator appeared in person and by counsel, and the movants, the Bank and the Committee (the Committee representing more than 78 per cent of outstanding certificates) also appeared by counsel; at the trial on said motion, respondent excluded evidence offered by relator that he had been advised by counsel for the trustees (such counsel having been appointed by respondent) that such additional compensation need not be approved by the court; and excluded evidence that the same was within the reasonable value of services rendered by relator; at the conclusion of said trial respondent entered a decree removing relator as co-trustee and appointing one Leo G. Desobry as his successor. Relator duly filed motions for new trial and in arrest which were overruled by respondent. Relator then duly filed his application for appeal and same was denied by respondent.

The decree removing relator recites the appearances, relates a history of the proceedings thus far, including all the charges that had been made in various petitions against the Bank; that, in view of such charges, it was improper for relator to accept additional compensation from the Bank; that relator had accepted the additional sum of $10,000 without seeking or obtaining the approval of the court therefor; that this act of relator tended to destroy his independence, place him under undue obligation to the Bank, impair his ability to perform his duties, and that the best interest of the trust demanded that he be removed as co-trustee; the decree then appointed the said Leo G. Desobry as co-trustee with all the powers, duties and obligations of relator as original co-trustee.

Respondent contends that our writ of prohibition should not be made permanent because, as we understand him, the circuit court had jurisdiction of the administration of the trust and of the person of the relator; therefore, whether or not the motion stated, or the proof showed, facts sufficient to justify relator's removal, the court's action cannot be inquired into upon application for prohibition. That this writ is only proper to prevent a court from acting without jurisdiction, or in excess of jurisdiction, and cannot be used to prevent or correct erroneous judgments, citing: State ex rel. Terminal Rail-

road Association v. Tracy, 237 Mo. 109, 140 S. W. 888; Wand v. Ryan, 166 Mo. 646, 65 S. W. 1025; Delaney v. Police Court, 167 Mo. 667, 67 S. W. 589; State ex rel. Kaysing v. Ryan, 334 Mo. 743, 67 S. W. (2d) 983; State ex rel. McNamee v. Stobie, 194 Mo. 14, 92 S. W. 191.

Those cases do hold that prohibition cannot be used as a substitute for appeal or writ of error and that a court, acting within its jurisdiction, will not be prohibited from rendering a judgment on a defective petition or even upon a petition which wholly fails to state a cause of action. But in each of those cases the attempt was to prohibit the rendition or enforcement of a *final* judgment, from which an appeal could be taken. That is not respondent's theory in the instant case. Respondent proceeded in the trial court and in this court upon the theory that the order removing Caulfield was not a final judgment, but an incident in the administration of the trust from which no appeal would lie. If that theory be correct, then we know of no adequate way in which relator could question respondent's jurisdiction to make the order of removal except by a writ of prohibition. On similar states of fact, this court has often held that prohibition is proper: State ex rel. v. Mulloy, 331 Mo. 776, 55 S. W. (2d) 294; State ex rel. v. Pearcy, 328 Mo. 560, 41 S. W. (2d) 403; State ex rel. v. Westhues, 316 Mo. 457, 290 S. W. 443; State ex rel. v. Knight, 338 Mo. 584, 92 S. W. (2d) 610; Dahlberg v. Fisse, 328 Mo. 213, 40 S. W. (2d) 606. In State ex rel. v. Mulloy, supra, we said:

"If, as petitioners contend, plaintiff's petition stated no cause of action against defendants, then the decree rendered is void and prohibition will lie to restrain its enforcement if there is no other adequate remedy."

█ It is conceded that the circuit court over which respondent presided had jurisdiction of the general subject of trusts. It had jurisdiction of this particular trust, including the power to pass upon the fitness of relator to act as trustee, but that jurisdiction could be invoked only by proper application and due process. [State ex rel. v. Rusk, 236 Mo. 201, 139 S. W. 199; Riggs v. Moise, 344 Mo. 177, 128 S. W. (2d) 632, decided by this Court en Banc, April, 1939; State ex rel. v. Muench, 217 Mo. 124, 117 S. W. 25; 65 C. J., sec. 473, p. 630.] When the motion to remove relator was filed, no process was issued and the only notice given was by publication in the court's official newspaper. Relator contends that this notice was insufficient to confer jurisdiction, since all parties in interest did not appear to the motion. The authorities cited lend strong support to relator's contention, but, under the facts, it is unnecessary to pass upon the question. However, those authorities do clearly hold that the removal of a trustee and appointment of a successor cannot be arbitrarily done and that all the beneficiaries are entitled to be heard.

█ Respondent says that, since relator was appointed by the

court, he may be removed with less formality than if he had been named in the trust instrument. If that argument is sound under any circumstances, it is not sound under the circumstances of this case, because relator has exactly the same status as if he had been named in the trust instrument. Respondent's decree appointing relator expressly says so and when the decree was rendered both parties to the trust instrument were in court and consented to said decree.

Now to the main question: Are the allegations of the motion and the facts found in the decree sufficient to justify the removal of relator? The only allegations of *fact* contained in the motion relate to the charges of alleged misconduct by the Bank prior to relator's appointment; to the failure of relator to attempt to compel the Bank to account; to relator's action in joining in the motion to strike out exceptions to the trustees' report in 1937; and to the receipt by relator of $10,000 from the Bank without the court's approval. The findings of fact in the decree follow the motion except that the decree omits any reference to the exceptions to the 1937 trustee report. The decree also finds that the acceptance of the additional sum from the Bank tends to impair the independence of relator and place him under undue obligations to the Bank.

We see no merit in the charge that relator was remiss in duty for failing to proceed against the Bank for its alleged malfeasance prior to his appointment. All the charges against the Bank were pending with respondent at the time relator was appointed, yet respondent expressly refused to remove the Bank; and appointed relator with instructions to act *with* the Bank with all the powers in both relator *and the Bank* as if they were the owners of the trust property. All these charges were still pending against the Bank when respondent removed relator, yet respondent continued the Bank in office as trustee with attributes of ownership and appointed another person as trustee to act *with the Bank*. It does not appear that relator is under any duty with respect to those charges. The responsibility, if any, for bringing them to trial rests upon those who make them.

Relator did not get the court's approval for receipt of additional compensation. Perhaps, out of abundance of caution, he should have procured such approval. Does his failure to do so justify his removal? We know of no case which so holds, even where the compensation is paid out of the trust property, provided the additional compensation does not exceed the reasonable value of the services performed by the trustee. The general rule is that, on proper showing, the court will ratify disbursements made without previous order. [Perry on Trusts and Trustees (6 Ed.), sec. 915; Bogert on same, sec. 815; Beard v. Beard, 140 N. Y. 260.] In the instant case the motion to remove did not charge, and respondent did not find, that the additional sum paid to relator by the Bank was in excess of

the value of the services rendered by relator. Relator offered to prove that his services were reasonably worth the sum paid him; also that he had been advised, by attorneys appointed by respondent, that he could legally accept the additional compensation without court order. Both offers of proof were rejected by respondent. We have no doubt that if relator, *before* he received the additional sum, had offered this proof to the respondent judge and the Bank had consented, respondent would have made the allowance without question.

It must be borne in mind that the objection is not to the *source* of the payment to relator. All persons interested knew, and it was so written in the decree, that relator was to receive his compensation *from the Bank.* The decree provided that the compensation was subject to change by the court; that is, the court, on the application of either the relator or the Bank, could increase or diminish the rate of compensation to cover the reasonable value of the services. The relator and the Bank, by voluntary agreement, increased relator's compensation. If, as relator offered to prove, the increase was for the reasonable value of services rendered there is no basis for respondent's speculative finding that the receipt by relator of the additional sum will tend to impair relator's independence and place him under undue obligation to the Bank.

■ It appears that only a small per cent of the certificate holders desire the removal of relator. While this is not binding on the court, it should be considered. [26 R. C. L., sec. 124, p. 1274.]

In Wiegand v. Woerner, 155 Mo. App. 227, 134 S. W. 596, it is said:

"To remove one as trustee there must be a clear necessity for such act, a clear necessity for it, in order to save the trust property. 'Mere error or even breach of trust, may not be sufficient; there must be such misconduct as to show want of capacity or of fidelity putting the trust in jeopardy.' [1 Perry on Trusts (6 Ed.), sec. 276, foot page 478.]"

We quote with approval also from Mississippi Valley Trust Co. v. Buder, 47 Fed. (2d) 507:

"'In no case ought the trustee to be removed where there is no danger of a breach of trust and some of the beneficiaries are satisfied with the management. Nor will a trustee be removed for every violation of duty, or even breach of trust, if the fund is in no danger of being lost. The power of removal of trustees appointed by deed or will ought to be exercised sparingly by the courts. There must be a clear necessity for interference to save the trust property. Mere error, or some breach of trust, may not be sufficient; there must be such misconduct as to show want of capacity or of fidelity, putting the trust in jeopardy.' [See, also, 3 Story Eq. Jur. (14 Ed.), sec. 1701; 4 Pom. Eq. Jur. (4 Ed.), sec. 1086; Lewin on Trusts (13 Ed.), sec. 494.]"

In the instant case relator was appointed trustee because of his "un-

questionable standing in the community." To remove him would deprive him of more than mere property rights; it would tend to injure his standing and should not be done except for "a clear necessity—putting the trust in danger." No such necessity has been shown and respondent, in the order of removal, acted in excess of his jurisdiction.

The conclusions reached make it unnecessary to pass upon the third and fourth assignments in relator's motion for judgment.

Our preliminary rule is made absolute. All concur, except *Hays, J.,* absent.