Ex Parte Irving Hernreich, Petitioner, v. Thomas H. Quinn, Sheriff.—No. 38056.—168 S. W. (2d) 1054.

Court en Banc, March 1, 1943.

*Robert E. Hannegan* and *Gilbert Weiss* for petitioner.

772

*Louis B. Sher* and *Bartley & Mayfield* for respondent.

ELLISON, C. J.—This is a proceeding in habeas corpus. The petitioner, Irving Hernreich, seeks release from the custody of the respondent sheriff, who holds him under a commitment for contempt for violation of an order and judgment of the circuit court in a

certiorari proceeding reviewing a decision of the Board of Adjustment of the City of St. Louis. The judgment of the circuit court in the certiorari proceeding was affirmed by the St. Louis Court of Appeals in Berard v. Board of Adjustment et al., 138 S. W. (2d) 731. Basically, the issues involve a construction of certain provisions of Art. 12, Chap. 38, Secs. 7412-7423, R. S. 1939, same, Mo. R. S. A., and the City's zoning ordinances adopted pursuant thereto, now Chap. VIII, Art. II, Revised Code of St. Louis, 1936, Secs. 160 to 185, pages 57 to 78.

The facts, as recited in an agreed statement of facts in the record, are that petitioner Hernreich and his wife bought Lot 11, City Block 5706 in April, 1935, and got their deed on July 12. The lot abutted two thoroughfares, East Lookout court and Adrian drive, and perhaps a third called Spring drive. At any rate the former two then were at natural grade. About two weeks later on July 23 the City established a grade for East Lookout court, raising it six to eight feet. Five days thereafter, on July 28, the Hernreichs made application for a building permit authorizing the erection of a four car garage and servants' quarters on the rear part of the lot. That permit was issued on September 27 and the next day they applied for and obtained a permit for the erection of a residence on the front part of the lot, more than 25 feet from the rear line.

From here on some of the background facts are nebulous. Part of them do not appear in the agreed statement of facts, but only in the petitioner's brief. But since they are undisputed we state enough of them to give a connected history of the case. The plan for the garage contemplated a driveway therefrom to East Lookout court immediately to the north. But this was rendered impracticable or impossible by the raise in the grade of that thoroughfare. So after construction work on the garage had progressed considerably the Hernreichs determined to convert the garage into a residence, and to put their garage where the residence was to have been, with a driveway to another thoroughfare in front of the lot. It seems this was done. At any rate they moved into the converted garage and used it as a residence.

Sec. 170 of the zoning ordinance provides that in the "A" Height and Area District, where the Hernreich lot is situate, "there shall be a rear yard having a minimum depth of twenty-five (25) feet." The garage, as converted into a residence, was not that far from the rear lot line. As we understand, adjoining neighbors complained to the Building Commissioner on that ground, and the Hernreichs made application to the Commissioner for a permit to occupy the residence as thus erected. He denied it. At any rate he issued an order to vacate. The Hernreichs then appealed to the Board of Adjustment, which granted the permit. In October, 1936, two adjoining neighbors, Dr. and Mrs. Louis Berard, as relators, took the case to the circuit court by certiorari under Sec. 7418 of the statutes and

Sec. 176 of the ordinance, supra, but without notice to the Hernreichs, who were not joined as record parties to that proceeding. Neither were they served with notice or process, nor did they enter their appearance therein. The cause was submitted on an agreed statement of facts, and on December 29, 1938, the circuit court set aside the decision of the Board of Adjustment and ordered that the residence be vacated within ten days after service of a copy of the judgment upon the occupants (the Hernreichs). The Board appealed to the St. Louis Court of Appeals, which affirmed the judgment, as aforesaid, in April, 1940.

In November, 1940, the relator Berards caused a copy of the judgment to be served on the Hernreichs, and in June, 1941, moved for a citation for contempt for violation thereof, by reason of their continued occupancy of the residence. An order to show cause was issued, and the Hernreichs made return thereto. Upon a hearing, judgment was entered by the circuit court declaring petitioner Irving A. Hernreich guilty of contempt of its judgment in the certiorari proceeding and ordering him confined in the city jail until he should purge himself by vacating the residence. In his return to the order to show cause Hernreich pleaded certain legal and evidentiary defenses. At the hearing he made an offer to prove them but they were excluded. The court held the only questions for decision were: whether the certiorari judgment was rendered; whether a copy thereof had been served on Hernreich; and whether he thereafter disobeyed its mandate by refusing to vacate the residence.

In his petition for our writ and his denial of the respondent sheriff's return the petitioner presents these defenses again. First, he assails the whole certiorari proceeding and the judgment therein on legal grounds appearing on the face of the record. These assignments start with the premise that the circuit court in that proceeding was not exercising a general or common law jurisdiction, but a special jurisdiction under the statutes and zoning ordinance, in consequence of which its authority to act "must appear in the record, and . . . cannot be presumed in a collateral proceeding"—quoting State ex rel. Dew v. Trimble, 306 Mo. 657, 673, 269 S. W. 617, 622(3). On this theory the petitioner contends the certiorari proceeding was improperly brought and the court had no jurisdiction thereof, because the record here and the recitals of the judgment in the certiorari proceeding fail to show the relator Berards were "aggrieved" parties under Sec. 7418 of the statutes and Sec. 176 of the zoning ordinance. Next he contends he was a necessary party to the certiorari proceeding because it brought under adjudication his property rights as the owner and occupant of the lot and building; and that since he was not made a party by the service of notice or process, and did not enter his appearance, the judgment was void.

And finally, attacking only that part of the judgment which ordered that the residence "be vacated within ten (10) days from the service

of a copy of this decree upon the occupants of same," petitioner asserts the circuit court's jurisdiction in the certiorari proceeding was derivative as on appeal; and that it could do no more than the Board of Adjustment could have done in the first instance. He therefore maintains that since the Board of Adjustment could not have made an order ousting him from the residence or punishing him as a contemner for violation thereof, the circuit court similarly lacked jurisdiction to do it—this all the more since he had not been served with notice or process. For all these reasons he contends the judgment, and particularly the order to vacate, and the adjudication of contempt in enforcement thereof, were unconstitutional as a denial of due process under Sec. 30, Art. II of the Constitution of Missouri and the Fourteenth Amendment, Constitution of the United States.

The other assignment or "defense" presented below and here is that the trial court's refusal to permit him to introduce evidence was a denial of due process. He sought to show that because of the peculiarities of his Lot 11 in shape, size, slope, drainage, rough terrain and a limestone sink thereon, the provision of Sec. 170 of the zoning ordinance requiring a rear ▬ yard of a minimum depth of 25 feet, was and is unreasonable, arbitrary, capricious and unconstitutional as applied to that lot. Another contention stressed is that said provision is discriminatory and unconstitutional because it excludes the master of the premises from occupying that rear strip for a residence, though permitting any number of servants to live there under Secs. 168(3) and 175(I) of the ordinance.

▬ If the foregoing judgment in the certiorari proceeding was void and unconstitutional as to the petitioner in any of the respects pleaded and proven, his disobedience of it was not a contempt;[1] and he may test the legality of his imprisonment by habeas corpus.[2]

As bearing on these constitutional questions, let us first summarize the pertinent provisions of the zoning ordinance. Sec. 176 thereof (under authorization of Sec. 7418 of the statutes, supra) provides that the Board of Adjustment may interpret the provisions of the ordinance, and vary the zoning regulations "where there are practical difficulties or unnecessary hardships in the way of carrying out the strict letter of" the ordinance. Some such provision was necessary to relieve against conditions which might make the ordinance unconstitutional in particular cases. Glencoe Lime & Cement Co. v. St. Louis, 341 Mo. 689, 694(3), 108 S. W. (2d) 143, 144(4). Testimony

---

[1]13 C. J., sec. 14, p. 13; 12 Am. Jur., sec. 24, p. 406; 14 Am. Jur., sec. 167, p. 367; Brownfield v. Bash, 340 Mo. 828, 832, 102 S. W. (2d) 880, 881(2); In re Irwin and Bushman, 320 Mo. 20, 27, 6 S. W. (2d) 597, 600(1); State ex rel. Hyde v. Westhues, 316 Mo. 457, 469(I), 290 S. W. 443, 446(2); In re Letcher, 269 Mo. 140, 147, 190 S. W. 19, 21(1); St. L., K. & S. Rd. Co. v. Wear, 135 Mo. 230, 265(6), 36 S. W. 357, 366(6), 33 L. R. A. 341.

[2]25 Am. Jur., sec. 29, p. 164; 29 C. J., sec. 23, p. 35; Ex parte Taft v. Shaw, 284 Mo. 531, 538, 225 S. W. 457, 459; Ex parte Diemer v. Weiss, 343 Mo. 626, 122 S. W. (2d) 922.

in proceedings before the Board is taken by a reporter and preserved. Both the statute and Sec. 176 of the ordinance permit appeals to the Board by "any person aggrieved" by any decision of the original administrative officer (in this case, the Building Commissioner.) The appellant must file notice of the appeal with both the former and the latter, and the Board of Adjustment must give public notice of the time of hearing the appeal, as well as "due notice to the parties in interest." At the hearing "any party" may appear in person or by agent or attorney.

Then the statute and Sec. 176 of the ordinance provide "any person or persons jointly or severally aggrieved by any decision of the Board of Adjustment . . ." may present to the circuit court a verified petition complaining that the decision was illegal, specifying the reasons. Thereupon the court may allow a writ of certiorari directed to the Board of Adjustment, to review its decision. That Board must make return, sending up certified or sworn copies of the parts of the record called for. But on the review the court is not restricted to the record thus brought up, for the statute and ordinance provide that, "if, upon the hearing, it shall appear to the court that testimony is necessary for the proper disposition of the matter, it may take additional evidence or appoint a referee." The evidence so taken becomes a part of the record, and the court may "reverse or affirm, wholly or partly, or may modify the decision brought up for review."

Petitioner's first contention is that Dr. and Mrs. Berard were not persons "aggrieved" within the meaning of the statute and ordinance, and therefore could not maintain the certiorari proceeding to review the decision of the Board of Adjustment granting the "occupancy" permit to the Hernreichs. The reason given is that the record affirmatively shows the Berards were not parties to the proceeding before the Board of Adjustment; and that the recitals of the judgment in the certiorari proceeding failed to show they had sufficient interest therein. Petitioner cites two cases[3] which hold, respectively, that one cannot appeal from a judgment, or compel the allowance of an appeal by mandamus, unless he be a proper or necessary party having a pecuniary or property right in the subject matter of the controversy, which is directly affected.

It may be conceded the general rule is that one not a party to the record is not entitled to certiorari. But as is said in 14 C. J. S., sec. 47, p. 196, there is a generally recognized exception to the rule, the exception being: "that a person with a personal interest in the subject matter of the proceeding may sue out the writ, and that a person is interested so as to be entitled to the writ if he is a party in form 'or in substance' to the proceeding sought to be reviewed, so as to be concluded by the determination thereof." Similarly, 10 Am.

[3] In re Campbell's Estate, 274 Mo. 343, 355, 202 S. W. 1114, 1115(1); State ex rel. Fischer v. Vories, 333 Mo. 197, 204(3), 62 S. W. (2d) 457, 459.

Jur., sec. 17, p. 542 declares: "If the petitioner for the writ is a party in substance, although not in form, he may have the writ. If the matter to be reviewed is one which affects the public generally, an individual citizen may ordinarily obtain the writ."[4]

We cannot sustain petitioner's contention. In our opinion the relator Berards were "aggrieved" parties within the meaning of the statute and Sec. 176 of the ordinance. It is true the record here merely shows the certiorari proceeding was submitted "upon the agreed statement of facts." And the judgment therein was only a general judgment with an order to vacate. Neither discloses what interest the Berards had in the controversy. But the petitioner's brief states, in connection with a plat in the record, that the Berards owned and resided on Lot 31, which abutted the rear part of the Hernreichs' Lot 11; and that the Berard residence was only 35 feet from the garage-residence built by the Hernreichs upon the latter lot in violation of the terms of Sec. 170 of the ordinance. By appeal to the Board of Adjustment the Hernreichs had obtained a permit sanctioning their occupancy and relaxing the "rear yard" provision of the section.

To attack that decision the Berards were *bound* to exhaust their remedy by certiorari under Sec. 176 of the ordinance before they could resort to an action at law or in equity[5] (unless they desired to challenge the constitutionality of the ordinance,[6] which, of course they did not, since they were invoking it.) Their right to protect their Lot 31 from damage in value, use and enjoyment, caused by an abutting owner's violation of the zoning ordinance, was a valuable property right—as much so as was that other owner's right to use and enjoy his lot, but *subject* to reasonable police regulations and without committing a nuisance—as to which see Clutter v. Blankenship, 346 Mo. 961, 964(2), 144 S. W. (2d)119, 120(3, 4).

The provision of the statute and Sec. 176 of the ordinance declaring who may petition for certiorari is very broad. It says "any person or persons jointly or severally aggrieved by any decision of the Board of Adjustment," thus seemingly contemplating one or a number of persons suffering either a joint or several detriment to their property rights, regardless of whether they were record parties before the Board. The provision earlier in the section allowing an appeal

[4]See also 11 C. J., sec. 97, p. 134; 19 L. R. A. (N. S.) 610; 103 A. S. R. 111, 115; 10 A. C. 862; 18 A. C. 667, 28 A. C. 910; 34 A. C. 1139, 1144. There are several Missouri cases which recognize or apply these rules: State ex rel. Shartel v. Westhues, 320 Mo. 1093, 1106, 9 S. W. (2d) 612, 617(3); State ex rel. Bennett v. Becker, 335 Mo. 1177, 1185, 76 S. W. (2d) 363, 367(7); State ex rel. Lane v. Corneli, 347 Mo. 932, 939(4), 149 S. W. (2d) 815, 820(5).

[5]Glencoe Lime & Cement Co. v. St. Louis, supra, 341 Mo. l. c. 693(3), 108 S. W. (2d) 144 (1, 2); State ex rel. Lambert v. Padberg, 346 Mo. 1082, 1090, 145 S. W. (2d) 123, 126(4).

[6]Superior Press Brick Co. v. St. Louis (Mo. Div. I), 152 S. W. (2d) 178, 183(5); Superior Press Brick Co. v. St. Louis (Mo. App.), 155 S. W. (2d) 290, 295(4).

from the original administrative officer *to* the Board of Adjustment is much narrower, in outward signification at least. It merely says ''any person aggrieved'' may do so. These clauses indicate a legislative recognition that such controversies will often originate at the instance of a single ownership, but that after the Board of Adjustment has acted and the time has arrived for taking the controversy into court, other owners may have an interest that should be recognized in the litigation. Considering the drastic restrictions of the zoning ordinance, which affect landowners in groups or zones not only for the public good but for their reciprocal benefit as well, we think the intent of the statute and ordinance is to permit an owner to intervene by certiorari if he is a party in substance, though not in form—which means that his property interest must be directly and substantially affected. That was true of the Berards in this case.

Petitioner's next assignment is that the circuit court's jurisdiction in the certiorari proceeding was derivative, as on appeal; and that since the Board of Adjustment could not have made an order ousting him from his residence or punishing him for contempt for violation thereof, therefore ▮▮▮ the circuit court lacked jurisdiction to do it. But Sec. 177 of the ordinance prohibits any person from using any building or premises erected or converted after its passage, until the Building Commissioner shall have issued a certificate of occupancy. And Sec. 184 makes the violation of any provision of the ordinance a misdemeanor punishable by a fine of not less than $10 nor more than $100 for each day of such violation. It further provides that any person who, having been served with an order ''to remove any such violation,'' shall fail to do so within ten days, shall be subject to a civil penalty of $100. The record in this case also shows that on September 28, 1936, the Building Commissioner issued ''an order to vacate,'' notifying the Hernreichs to vacate the residence. So we think the circuit court had that same power in the certiorari proceeding.

As to the court's power to punish for contempt. We may concede for the purposes of the case that the Board of Adjustment did not have that power, since it is not a court and there is no statute granting the power[7]—though there is at least one case in this state seemingly to the contrary, with reference to county boards of equalization.[8] But whatever the law may be on that question, the fact remains that the circuit court was and is a constitutional court and also a superior court of record of general jurisdiction, possessing inherent power to punish for contempt. Thompson v. Farmers Exchange Bank, 333 Mo. 437, 457(9), 62 S. W. (2d) 803, 811(18). And even

---

[7] 12 Am. Jur., sec. 54, p. 426; 13 C. J., sec. 63, p. 49; 17 C. J. S., sec. 46, p. 62; Annotations: 8 A. L. R., p. 1573; 54 A. L. R., p. 326; 73 A. L. R., p. 1189; Ex parte Stone (Mo. banc), 183 S. W. 1058(1); State ex rel. Haughey v. Ryan, 182 Mo. 349, 356, 81 S. W. 435, 436-7.

[8] In re Sanford, 236 Mo. 665, 689 et seq., 139 S. W. 376, 382(6).

if it were further granted (which we ·do not) that the court was exercising special powers outside of its general jurisdiction as to which its inherent power to punish for contempt could not be invoked, still it was the same court of record and could exercise that power under the statute. Sec. 2028(3), R. S. 1939, Mo. R. S. A., sec. 2028(3). There is nothing in the point that the court could not punish the petitioner's recalcitrance because the ordinance made the act a misdemeanor. 17 C. J. S., sec. 59 b, p. 70. So we rule this assignment against him.

The third assignment is that the judgment and order to vacate in the certiorari proceeding were void and unconstitutional as to the petitioner, because the circuit court was attempting thereby to adjudicate his property rights when he was not a party to the proceeding and had not been served with notice or process, or entered his appearance. Ordinarily, under our practice, the writ of certiorari is the common law writ unmodified by statute. It brings up only the record; searches only for infirmities in jurisdiction or power; is concerned with questions of law, not fact; does not authorize an inquiry into the merits; and can relieve only by a quashal of the record below in whole or part, without the substitution of a new judgment or order. State ex rel. St. L. ·Union Trust Co. v. Neaf, 346 Mo. 86, 92, 94, 139 S. W. (2d) 958, 961-3. Since the purpose of the proceeding is to bring up for review the record of an inferior tribunal, and there can be no adjudication of the merits, the writ in this State is addressed only to that tribunal, and the adversary parties below are not made respondents though usually one of them is relator.

But where, as here, the reviewing court is not confined to the *record proper* made below, and it can render a new judgment, surely a different practice should be followed. As will be remembered, Sec. 7418 and Sec. 176 of the ordinance, supra, require that *testimony* in proceedings before the Board of Adjustment be taken by a reporter and preserved. In response to a writ of certiorari the Board must return certified or sworn copies of the "papers acted upon by it," which doubtless includes the testimony, as we shall presently see from. the practice followed in this case. The reviewing court is authorized by the statute and ordinance to take further testimony; and may not only reverse or affirm, wholly or partly, but may *modify* the decision brought up for review. In short, the court can render a new judgment on the merits based on new testimony. In the instant case the record shows an Agreed Statement of Facts, "in addition to the testimony before the Board of Adjustment," was filed in the circuit court. That Agreed Statement was signed by counsel for the relator Berards and the respondent Board of Adjustment, none of whom were the petitioner's counsel here. And the judgment of the court recites the cause was submitted on the agreed statement of facts.

It is stated *generally* of certiorari in 11 C. J., sec. 119, p. 142, that "All persons interested and whose rights are directly affected, or who

were proper parties to the record sought to be annulled, must be made defendants.'' So also 14 C. J. S., sec. 60, p. 205, says that while, strictly speaking, the only proper respondent or defendant on a petition for a writ of certiorari is the tribunal whose record is sought to be quashed, yet, ''the practice is likewise usual and proper to bring in all parties or other persons who are liable to be affected by the judgment in order that they may have an opportunity to be heard. However, while it has been stated broadly in some jurisdictions that all persons interested and whose rights are directly affected or who are proper parties to the record sought to be annulled must be made defendants, it has also been held that the presence of such parties is not necessary to the issuance of the writ although it may be regarded as necessary to the rendition of a judgment binding on them. In other words, the rights of one not a party to the proceedings cannot be determined unless he is brought into court.''

Well reasoned authorities support this view.[9] Without holding the foregoing doctrine should be followed in cases employing the common law writ, we think without question it is necessarily applicable to the form of certiorari provided for in Sec. 7418 and Sec. 176 of the St. Louis zoning ordinance, supra, and especially under the facts of this case. A contrary rule would result in a denial of due process under the State and Federal Constitutions. Even in certiorari to the Courts of Appeals for conflict of decisions, our Rule 34 provides no writ shall be granted unless the applicant therefor shall give at least five days' notice to ''all parties to be adversely affected, or their attorneys of record.'' See 4 Houts Mo. Pleading and Practice, sec. 1407, p. 699. We must construe the statute and ordinance as permitting a hearing and contemplating notice at least to one who was a party below and whose property interests are directly affected. In re Letcher, supra, 269 Mo. l. c. 148, 190 S. W. l. c. 21(4). This does no violence to them. Their provisions are abundant for public notice and notice to interested parties when appeals are taken *to* the Board of Adjustment. The judgment and order to vacate entered in the certiorari proceeding below were not binding on the petitioner. Having reached this conclusion it is unnecessary to consider the other constitutional questions raised by him. For the reasons stated it is ordered that the petitioner be discharged. All concur except *Gantt, J.,* absent.

---

[9]Ferris, Extraordinary Legal Remedies, sec. 175, p. 201; Great American Ins. Co. of N. Y. v. Peters, 105 Fla. 380, 394, 141 So. 322, 328(14); Sumner-Tacoma Stage Co. v. Dep't Public Works, 142 Wash. 594, 596, 245 Pac. 245, 246-7(1, 2); Hilton v. Second Judicial Dist. Ct., 43 Nev. 128, 137(7), 183 Pac. 317, 319(7); Morgan v. Mayor and Council, Roselle Park, 129 N. J. L. 231, 28 Atl. (2d) 625, 626(1); Cooper v. Town of Belleville (N. J. Sup.), 118 Atl. 332, 333(5); Towner v. Mansfield Tp. Bd. Education, 3 N. J. Misc. 448, 449, 128 Atl. 602, 603(1).