**STATE of Missouri ex rel. HOUSING AU-THORITY OF ST. LOUIS COUNTY, a municipal corporation, Fischer & Frichtel Construction Co., Design & Construction, Inc. and Herbert G. Poertner, Relators (Respondents),**

v.

**J. C. WIND, E. C. Wirtel, A. A. Grellner, Chairman and Herman Wagner, Secretary, constituting the Board of Zoning Adjustment of the County of St. Louis, Respondents,**

**Gus Tomich, Ann Tomich, his wife, Joseph Nothum, Mariann Nothum, his wife, Intervenors (Appellants).**

No. 30459.

St. Louis Court of Appeals. Missouri.

July 5, 1960.

Rehearing Denied Sept. 6, 1960.

**556**

J. A. Gochenour, Frank Bild, Fred J. Hoffmeister, St. Louis, for appellants.

John McAtee, Clayton, Carroll J. Donohue, Shulamith, Simon, Husch, Eppenberger, Donohue, Elson & Jones, St. Louis, for respondents.

DOERNER, Commissioner.

This case involves the validity of forty-eight building permits which were granted to the respondent Housing Authority of St. Louis County for the construction of part of a public housing project upon a tract of approximately twenty-nine or thirty acres owned by the Housing Authority in the Jefferson Barracks area of St. Louis County. Respondents Fischer & Frichtel Construction Company and Design and Construction, Inc., are the general contractors engaged in building the project, and respondent Herbert G. Poertner is the Public Works Director of St. Louis County. The only appellants are Gus Tomich and Ann Tomich, his wife, and Joseph Nothum and Mariann Nothum, his wife, who were permitted to intervene in the proceedings in the circuit court.

Beginning in late September, 1958, surface grading of the area was commenced on the project. No permit for such grading was required. On November 24, 1958, William Guhman, the then Public Works Director of the County, issued ninety-six individual permits to the Housing Authority, forty-eight of which were for the erection and construction of four-family buildings and the remaining forty-eight of which were for two-family units. For a reason which is not clear from the transcript, the permits for the forty-eight two-family buildings were revoked on November 28, 1958, but were reissued on December 12, 1958. On January 9, 1959, appellants Tomich and Nothum filed their appeal with the Board of Zoning Adjustment of St. Louis County praying for the revocation and rescission of all ninety-six permits. After a hearing held on January 28, 1959, the Board, on February 18, 1959, unanimously held that the Public Works Director had erred in issuing the permits for the two-family dwellings, reversed his decision, and "requested" the Director to revoke such permits.

Thereupon the respondents herein petitioned the Circuit Court of St. Louis County for a writ of certiorari to review the decision of the Board of Zoning Adjustment. Pursuant thereto, the writ was issued (presumably to the members of that Board, though the transcript is silent on the matter) and a certified transcript of the proceedings before the Board of Zoning Adjustment was filed in court on March 19, 1959. Meanwhile the appellants Tomich and Nothum, having sought and been granted leave to intervene, filed what they termed a cross-petition, in which they asked the court to ratify and affirm the order of the Board. The cause was argued and submitted on April 2, and on June 1, 1959, the Circuit Court entered a judgment and decree reversing the decision of the Board of Zoning Adjustment and dismissing appellants' cross-petition. Following an unavailing motion for a new trial, appellants Tomich and Nothum appealed to this court.

Various contentions made during the proceedings below by the respective parties have been abandoned. Indeed, the legality of the forty-eight permits for the four-

family dwellings is no longer questioned by the appellants. Analyzing the points in the briefs of the parties, the issues presented to us are: (1) whether the Housing Authority is subject to the zoning ordinances of St. Louis County; (2) whether appellants were such "aggrieved parties" as could appeal to the Board of Zoning Adjustment; (3) whether, if they were, their appeal was timely filed; (4) whether the circuit court erred in substituting its own judgment for that of the Board; and (5) whether the court erred in interpreting the provisions of the zoning ordinance.

■ Presumably relying on the theory that the best defense is an offense, respondents argue in their brief that the Housing Authority is exempt from the zoning ordinance of St. Louis County because it is a municipal corporation, exercising public and essential governmental functions, and has the right to acquire lands by the exercise of the power of eminent domain. It is true that a Housing Authority created pursuant to the statutes has been both legislatively and judicially declared to be a municipal corporation. Section 99.080 RSMo 1949, V.A.M.S.; Laret Investment Co. v. Dickmann, 345 Mo. 449, 134 S.W.2d 65; Schmoll v. Housing Authority of St. Louis County, Mo., 321 S.W.2d 494. It is likewise true that it is given the right " * * * to acquire by the exercise of the power of eminent domain any real property in fee simple or other estate * * *." Section 99.080(4); Section 99.-120. But it does not follow, as respondents contend, that a housing authority is therefore immune from local zoning laws or ordinances. Indeed, as respondents admit, by Section 99.130 the General Assembly specifically provided:

"All housing projects of an authority shall be subject to the planning, zoning, sanitary and building laws, ordinances and regulations applicable to the locality in which the housing project is situated. In the planning and location of any housing project, an authority shall take into considera-

tion the relationship of the project to any larger plan or long-range program for the development of the area in which the housing authority functions. (R.S.1939, § 7865)"

Respondents argue that that section " * * simply authorizes the regulation of housing projects with respect to matters directly and vitally related to health and welfare matters, but does not even purport to make the location of projects a subject of local cognizance." The answer to this argument is that the *location* of the project is not in dispute. Appellants do not contend that a housing project may not be located on the tract involved; what they question, as will be more fully developed later, is whether, under the zoning ordinance of St. Louis County, two-family dwellings may be interspersed with four-family buildings.

Furthermore, while it was said in State of Missouri ex rel. Askew et al. v. Kopp, Mo., 330 S.W.2d 882, 888, that " * * * Local zoning ordinances are not applicable to public uses of property for which an agency of the government has the power to acquire lands by the exercise of the power of eminent domain * * *," the court was careful to point out that the state and its agencies would be within the purview of such regulations if " * * * an intention to include them is clearly manifest * *." By the first sentence of Section 99.130 the legislature stated in plain and unequivocal language that all housing authority projects shall be subject to local zoning and building laws and ordinances of the locality, thus clearly manifesting its intention that housing projects are not to be immune from such local regulations.

■ Section 1004.100, St. Louis County Revised Ordinances, 1958, relating to the Board of Zoning Adjustment of St. Louis County, provides that an appeal to the Board may be made " * * * by any person * * * allegedly aggrieved by the grant or refusal of a use and occupancy permit or by any other administrative de-

cision based or claimed to be based, in whole or in part, upon any Zoning regulations, or the Zoning District Map." Respondents contend that appellants are not aggrieved parties because "* * * Private individuals lack standing to complain of alleged zoning violations without proving themselves specially and peculiarly injured * * *"; and that no showing of special damage was made by appellants in this case. However, in the latest case cited by respondents, Kellog v. Joint Council of Women's Auxiliaries Welfare Ass'n, Mo., 265 S.W.2d 374, the Supreme Court made it clear that the special injury required to sustain an action to enjoin the violation of a zoning ordinance need not necessarily be a depreciation in value of the plaintiff's property or any special pecuniary damage. It held, in fact, that as owners of residences in the district the plaintiffs there had such an interest in the continuation of the observance of the single-family dwelling classification as to entitle them to maintain the action. Here there was evidence that the property belonging to appellants Nothum was directly across the street, and less than 100 feet, from the tract belonging to the Housing Authority. The proximity of his property to that where the alleged violation was to occur was sufficient to constitute him an aggrieved party. Kellog v. Joint Council of Women's Auxiliaries Welfare Ass'n, supra; Hernreich v. Quinn, 350 Mo. 770, 168 S.W.2d 1054. Furthermore, this is not a suit to enjoin a violation of a zoning ordinance, but a proceeding under the zoning ordinances to protest the issuance of a building permit allegedly in violation thereof. If the validity of zoning ordinances are predicated upon the protection of the public health, safety, morals and welfare, as was held in Flora Realty & Investment Co. v. City of Ladue, 362 Mo. 1025, 246 S.W.2d 771, it might well be argued that every resident in the community would, in some measure, have an interest in protesting the issuance of a building permit issued in violation of the applicable ordinance. In that connection, see O'Connor v. Board of Zoning Appeals of Town of Stratford, 140 Conn. 65, 98 A.2d 515. In any event, under the evidence adduced, we hold that appellants were entitled as aggrieved parties to appeal to the Board of Zoning Adjustment from the decision of the Public Works Director.

■ No provision of the zoning ordinances of St. Louis County specifies the time limitation for the taking of an appeal from an order of the Public Works Director to the Board of Zoning Adjustment. The respondent argues that under such circumstances a reasonable time for an appeal is allowed, and that appellants here are barred from relief because their appeal was not taken within a reasonable time. The undisputed facts are that while the permits were originally issued on November 24, 1958, they were revoked by the Public Works Director on November 28, 1958, and were not reissued or reinstated until December 12, 1958. Obviously the appellants could not appeal during the time the permits were revoked, because they then had no basis for a complaint. Appellants' appeal was filed on January 9, 1959, or twenty-eight days after the reissuance of the permits, which, in our opinion, was not an unreasonable time. The cases of State of Missouri ex rel. Burns v. Stanton, Mo.App., 311 S.W.2d 137, and Elmcrest Realty Co., Inc., et al. v. Zoning Board of Review of City of Warwick, 78 R.I. 432, 82 A.2d 846, cited by respondents, involved delays in the appeal of almost six months, and three months respectively, after the protested permits were issued, and are therefore not persuasive.

■■ Having cleared these preliminary hurdles raised by respondents, we turn to the allegations of error advanced by appellants. In the first of these they maintain that the circuit court erred in that it substituted its own judgment for that of the Board of Zoning Adjustment. If they mean by this, as would appear from their brief, that a court may never differ from

the decision of a Board of Zoning Adjustment they have obviously overlooked the scope of judicial review of such decisions or orders. This court went quite fully into that subject, in Veal v. Leimkuehler, Mo. App., 249 S.W.2d 491, wherein it was stated that the circuit court may not substitute its own judgment *on the evidence* for that of the Board—but that it is authorized to decide whether the Board of Adjustment reasonably could have made its findings and reached its result upon consideration of all of the evidence before it, and to set aside decisions clearly contrary to the overwhelming weight of the evidence. The primary issue here involved, however, is not one of fact but one of law. And, as was pointed out in Veal v. Leimkuehler, supra, and in Phillips v. Board of Adjustment of City of Bellefontaine Neighbors, Mo.App., 308 S.W. 2d 765, 767, an arbitrary or capricious or otherwise illegal ruling by the Board should be set aside by the circuit court. As was pointed out in the latter case, were this not true the appeal accorded would be of no value.

A clearer understanding of the decisive issue in the case will be gained by a brief summarization of the zoning ordinance in question, Ch. 1003, St. Louis County Revised Ordinances, 1958. By Sections 1003.110 to 1003.250, inclusive, the county is divided into 16 districts, ranging from the "A" Small Farm District to the "L" Resort District. In general, the legislative pattern followed in each of such districts is to describe the use regulation, the parking regulation, the height regulation, the area regulation (including front, side and rear yards), and, where applicable, the intensity of use regulation. Furthermore, a definite pattern was obviously followed in the description of the use regulation of those districts pertaining to dwellings, in that the use permitted in the less restricted district includes that of the more restricted use. As an example, single-family dwellings are permitted in the two-family district, and single and two-family dwellings are permitted in the multiple dwelling district.

All parties are agreed that the tract here involved is located in the "G" Multiple Dwelling District, in which the regulations limit the use of buildings (so far as here pertinent) to "multiple dwellings," to "two-family dwellings," and to single-family dwellings. By the section of the zoning ordinance containing the definition of those terms, Section 1003.030, a "two-family dwelling" is defined as "A building designed for or occupied exclusively by two families," while a "multiple dwelling" is defined as "A building or portion thereof designed for or occupied by more than two families."

Section 1003.090(3) of the Zoning Ordinance provides that "Every building hereafter erected or structurally altered shall be located on a lot, and in no case shall there be more than one main building on one lot, except as provided in Section 1003.280." Section 1003.280 contains the additional general regulations which, by reference, are incorporated as supplementing and qualifying all of the district regulations. Paragraph (15) thereof provides that "More than one industrial, commercial, multiple dwelling or institutional building may be erected upon a single lot or tract, but the yards and open spaces required around the boundaries of the lot or tract shall not be encroached upon by any such buildings, nor shall there be any change in the intensity of use requirements."

Appellants concede that two-family dwellings may be erected in "G" Multiple Dwelling Districts in which the Housing Authority's land is located. They raise no question as to any possible violation of either the area regulation or the intensity of use regulation set forth in Section 1003.200, containing the regulations for that district. They admit (at least in this court) that the forty-eight four-family units may legally be erected on the land in question. They concede that if the Housing Authority proposed to erect ninety-six four-family dwellings on the twenty-nine or thirty acre

tract it might legally do so, since a four-family dwelling is a multiple dwelling as defined by Section 1003.030(15). Simply stated, their contention is that even though Section 1003.280(15) authorizes the erection of two four-family dwellings on one lot or tract, a four-family and a two-family dwelling may not be built on the same parcel of property. This because a two-family dwelling is not a multiple dwelling as defined by Section 1003.030(15).

■ It is true that that section and paragraph of the zoning ordinance defines a multiple dwelling as a building designed for occupancy by more than two families. And, it is the general rule that when a legislative body enacts a statute or ordinance which prescribes the meaning to be given to particular words or terms used by it, such meaning is binding on the courts even though at variance with the common and ordinary understanding of the words or terms. Fox v. Standard Oil Co. of New Jersey, 294 U.S. 87, 55 S.Ct. 333, 79 L.Ed. 780. Like most rules, however, this one is not without its exceptions. No less an authority than the same court last cited held, in the later case of Lawson v. Suwannee Fruit & S.S. Co., 336 U.S. 198, 69 S.Ct. 503, 93 L.Ed. 611, that the court was not bound to follow the statutory definition where obvious incongruities in the statute would thereby be created, nor where one of the major purposes of the legislation would be defeated or destroyed. Nor is a court required to adhere to the statutory meaning if the result reached would be absurd. Bunnell v. Parelius, 166 Or. 174, 111 P.2d 88. And lastly, a court is not bound by the statutory definition if it is evident from the enactment that the legislative body did not intend the definition to apply to every use of the word or term throughout the statute or ordinance.

An examination of the entire zoning ordinance discloses that the meaning of the term "multiple housing" is not uniform throughout the ordinance, nor does it always accord with the definition found in Section 1003.030(15). At some places in the ordinance the term is used more restrictively, and at other places it encompasses a broader scope than the definition. For example, Section 1003.200(4), regulating the intensity of use in the "G" Multiple Dwelling District, reads in part:

> "(b) A lot on which there is erected a two-family dwelling shall contain an area of not less than two thousand square feet per family.

> "(c) A lot on which there is erected a three-family dwelling shall contain an area of not less than twelve hundred fifty square feet per family.

> "(d) A lot on which there is erected a multiple dwelling shall contain an area of not less than one thousand square feet per family, * * *."

Thus, while under Section 1003.030(15) a three-family dwelling is a "multiple dwelling," it is evident that that term was used in Section 1003.200(4) to mean dwellings to be occupied by four or more families. In contrast, in Section 1003.200(3), relating to the parking regulations in the "G" Multiple Dwelling District, it is provided:

> "Where a lot is occupied by a multiple dwelling there shall be provided accessible parking area on the lot adequate to accommodate one car for each dwelling unit provided in the main building."

Thus, unless it is to be concluded that no parking spaces must be provided for two-family dwellings constructed in the "G" District, a result inconsistent with other parking regulations of the ordinance, the term "multiple dwelling" as here used encompasses a two-family dwelling.

Furthermore, if the meaning of the term is limited to that contained in the definition, a result inconsistent with the evident legislative pattern followed in the classification of the various districts will ensue. In general, as was noted, that pattern permits the erection of a higher-type dwelling in the

next lower-type classification. Thus, a two-family dwelling may be erected in a "G" Multiple Family District. But, under the construction of Section 1003.280(15) contended for by appellants, it would be a violation of the ordinance if both types were erected on one lot or tract, though they might fully meet the use, area, parking, and other regulations of the "G" District.

Of even greater significance is the fact that if the meaning of the term as used in Section 1003.280(15) were to be restricted to the legislative definition it would lead to an absurd and indefensible result. As pointed out by respondents, if it is so restricted an owner of a tract containing 384,000 square feet may legally, under the intensity of use regulation in the "G" District, heretofore quoted, crowd 384 families into ninety-six four-family dwellings erected thereon, whereas it would be a violation of the ordinance to intersperse forty-eight two-family dwellings with forty-eight four-family dwellings for the maximum number of 288 families then permissible in the same area of 384,000 square feet. In short, Section 1003.280(15), if so interpreted, would permit a greater concentration of population in what the zoning ordinance treats as a less desirable type of dwelling, but would declare illegal a less intensive concentration if attempted to be housed in a higher type of structure.

Hence, it is apparent that to restrict the meaning of the term "multiple dwelling" in Section 1003.280(15) to that set forth in Section 1003.030(15) would not only produce an absurd result, and be inconsistent with the varied application of the term by the legislative body, but that it would be contrary to and destructive of the declared purposes of the ordinance. As set forth in Section 1003.010, the zoning ordinance was adopted:

"For the purpose of promoting the health, safety, morals, comfort or the general welfare, to conserve and protect property and building values, to secure the most economical use of land, and to facilitate the adequate provision of public improvements, * * *."

It is generally recognized that the greater the concentration of population in a given area, the greater will be the attending problems of the public health, safety and morals. The governmental power to interfere by zoning regulations with the general rights of a landowner by restricting the character of his use is founded on the exercise of the police power of the state. But its power is not unlimited, and such restrictions cannot be imposed if they do not bear a substantial relationship to the public health, safety, morals or general welfare. Nectow v. City of Cambridge, 277 U.S. 183, 48 S.Ct. 447, 72 L.Ed. 842; Downing v. City of Joplin, Mo., 312 S.W.2d 81. Appellants have advanced no explanation, nor is one apparent, as to how the interpretation of Section 1003.280(15) for which they contend would accord either with the fundamental purposes of the ordinance, or with the permissible exercise of the police power. Conversely, the construction of the Section to permit the erection in a "G" District of both a two-family and a four-family dwelling on one lot or tract, so long as the yard, open spaces, intensity of use and other applicable regulations are observed, would be consistent with both.

For these reasons we think it evident that the legislative body which enacted the zoning ordinance did not intend to superimpose the meaning of the term "multiple housing" as defined in Section 1003.030(15) upon every use of such words throughout the ordinance, and that as used in Section 1003.280(15) it was intended to apply to a two-family dwelling as well as to one containing more than two families. It therefore follows that the forty-eight permits for the erection of the two-family dwellings issued by the Public Works Director are valid and legal.

Accordingly, the judgment of the circuit court should be affirmed, and the Commissioner so recommends.

PER CURIAM.

The foregoing opinion by DOERNER, C., is adopted as the opinion of the court.

Accordingly, the judgment is affirmed.

WOLFE, P. J., and ANDERSON and RUDDY, JJ., concur.