Nellie ALLEN et al., Plaintiffs-Appellants,

v.

Donald COFFEL et al., as the Mayor and Board of Aldermen of the City of Peculiar, Missouri and Excalibur Enterprises, Ltd., a corporation, Defendants-Respondents.

STATE of Missouri ex rel. Nellie ALLEN et al., Plaintiffs-Appellants,

v.

Donald COFFEL et al., the Mayor and Members of the Board of Aldermen of the City of Peculiar, Missouri, Defendants-Respondents.

Nos. 25734, 25737.

Missouri Court of Appeals, Kansas City District.

Dec. 4, 1972.

Elvin S. Douglas, Jr., Crouch, Crouch, Spangler & Douglas, Harrisonville, for plaintiffs-appellants.

Lynn K. Ballew, Shubert, Hight & Ballew, Harrisonville, for defendants-respondents Excalibur Enterprises, Ltd.

Paul E. Panek, City Atty., Belton, for defendants-respondents Donald Coffel, Glen Mullen, Les Johnson, Ralph Hetherington, Robert Bulard, as Mayor and Board of Aldermen of City of Peculiar, Mo.

Before SHANGLER, C. J., and CROSS and DIXON, JJ.

SHANGLER, Chief Judge.

The plaintiffs filed, successively, a Petition for Review under Section 89.110, V. A.M.S., and then a Petition for Declaratory Judgment, each of which undertook to challenge the legality of two zoning ordinances enacted by the Board of Aldermen of the City of Peculiar. The trial court dismissed the Petition for Review upon the ground that the statutory review by writ of certiorari was not an appropriate remedy to test the lawfulness of the exercise of the legislative function. The trial court dismissed the Petition for Declaratory Judgment upon the ground that the plaintiffs lacked standing to contest the validity of the zoning ordinances. The plaintiffs have appealed from each judgment. We have consolidated these appeals.

The plaintiffs virtually acknowledge that their initial choice of remedy was not apt for the purpose intended. The power to zone property is conferred by statute upon the legislative body of a municipality. Sections 89.020–89.060, V.A.M. S. The exercise of that power, then, is a legislative function. Strandberg v. Kansas City, Mo. banc, 415 S.W.2d 737, 742 [3]. The statutory procedure prescribed by Section 89.110, V.A.M.S., and invoked by plaintiffs in their first petition, is for review by certiorari "by any decision of the board of adjustment, or any officer, department, board or bureau of the munici-

pality." The effect of that statute is to limit review by certiorari to the *decisions,* that is, the judicial acts of the agencies therein specified. Certiorari does not lie, however, to review the exercise of the legislative power. State ex rel. Croy v. City of Raytown, Mo.App., 289 S.W.2d 153, 156 [3, 4]; State ex rel. Adams v. Crain, Mo. App., 201 S.W.2d 426, 429 [2]. The trial court properly dismissed the petition because review by certiorari was not available under the statute to test the validity of the zoning ordinances. Accordingly, appeal number 25,737 taken from that judgment of dismissal is affirmed.

In their Petition for Declaratory Judgment, the plaintiffs alleged they were owners of land outside the corporate limits of the City of Peculiar, but adjacent and contiguous to a certain tract located within the city which the Board of Aldermen had undertaken to rezone by ordinance for use as a mobile home park. The petition further alleged numerous irregularities in the legislative procedure by which the ordinances were adopted and sought a declaration that the enactments were unlawful. The count for declaratory relief was joined with counts for prohibitory injunction and mandatory injunction to enjoin defendant Excalibur Enterprises, Ltd., which had been granted a permit under the ordinances to develop the tract as a mobile home park, from exercising that permit and to have it annulled. It should be noted also that the stipulation of the parties, which has become part of the transcript record, shows that only one of the five plaintiffs was a resident of the city.

The defendants moved to dismiss this petition on the ground that no justiciable controversy was shown, that is, that plaintiffs had not alleged that they owned property within the corporate limits of the City of Peculiar and were without standing, therefore, to contest the validity of the zoning ordinances of that city. The trial court adopted the rationale of these contentions as is made explicit in the Memo-

randum Opinion appended to the judgment:

"The basis of the Court's ruling is that none of the plaintiffs are aggrieved persons since the property which they own lies outside of the city limits of Peculiar, Missouri. It is the opinion of the Court that in order for the defendants (sic) to have a cognizable interest which would give them standing to protest the zoning ordinance of the City of Peculiar, it would be necessary that plaintiffs be owners of the property located within the city limits of Peculiar, Missouri, and which is affected by the change in zoning classifications."

The correctness of the position taken by the defendants, and hence the propriety of the trial court's judgment, is to be determined by whether plaintiffs have pleaded a cause of action cognizable by declaratory judgment.

 The declaratory judgment remedy is made available by Section 527.020, V.A.M.S. to, among others, "(a)ny person . . . whose rights, status or other legal relations are affected by a statute, municipal ordinance, contract or franchise." The necessary condition of judicial relief in such actions is the existence of a justiciable controversy. Glick v. Allstate Insurance Company, Mo.App., 435 S.W.2d 17, 20 [1]. A justiciable controversy arises only when the plaintiff asserts a legally protectable interest, that is, some substantial "right, status or other legal relation" that the defendant has some power to affect. Cotton v. Iowa Mutual Liability Co., 363 Mo. 400, 251 S.W.2d 246, 249 [1–5]; Borchard, Declaratory Judgments, pps. 48–50. We understand the allegations in plaintiffs' count for declaratory relief as assertions that as owners of property outside the limits of the City of Peculiar, but contiguous to property within the boundaries of the city—which property has been rezoned by ordinances—they have a legally protectable

interest, and therefore standing, to contest the validity of the ordinances by declaratory judgment. We conclude that the petition sufficiently pleads an interest which will qualify plaintiffs for relief by declaratory judgment.

In their arguments to this point, both in the memoranda of authorities submitted to the trial court and in the briefs on appeal, the parties cite zoning decisions in support of their respective positions without distinguishing the form of the dispute or nature of the remedy involved. They have assumed that the qualifying interest to accord standing is the same in an original action against an ordinance, as by declaratory judgment and injunction, as it is in a review of the decision of an administrative authority, as by statutory certiorari. In this regard, one pre-eminent authority has discerned the general rule that:

"(A)ny person who can show that the existence or enforcement of a zoning restriction adversely affects, or will adversely affect, a property interest vested in him or that the grant of a permit to another or rezoning of another's land will similarly affect him, has the requisite justiciable interest in the controversy, and is a proper party plaintiff. In this aspect, the right of a litigant to sue for declaratory judgment or for an injunction is based upon the same criteria as are determinative of the status of a petitioner as a 'party aggrieved' to bring certiorari to review the determination of a board of appeals or adjustment. The difference, if any, relates only to the forum and the form of remedy." Rathkopf, The Law of Zoning and Planning, Chapter 36, Sec. 1.

See, also, John D. Ayer, Law of Standing, 55 Iowa Law Review, 344, 346. Although the courts of this state have not consciously articulated such a rule, they have applied these criteria of standing in zoning cases interchangeably.[1]

---

1. E. g., in State ex rel. Algonquin Golf Club v. Lewis, Mo.App., 395 S.W.2d 522,

the question of whether owners of property adjoining a proposed parking lot

■ Recently, we observed in Stickelber v. Board of Zoning Adjustment, Mo.App., 442 S.W.2d 134, that whether a protectable interest is shown so as to invest standing in such controversies is a matter for ad hoc determination by the courts under the given circumstances (l.c. 136[1]) depending, not only upon the immediacy of the interest, but also the proximity of the property, affected (l.c. 137[3]). And it is now well established that an adjoining, confronting or nearby property owner has standing, without further proof of special damage, to assert the invalidity of an ordinance or the right for review of an administrative decision affecting the property in question. Hernreich v. Quinn, banc, 350 Mo. 770, 168 S.W.2d 1054, 1058[3, 4]; Kellog v. Joint Council of Women's Auxiliaries Welfare Ass'n, Mo., 265 S.W.2d 374, 376[1, 2]; State ex rel. Housing Authority v. Wind, Mo.App., 337 S.W.2d 554, 557[2, 3]; State ex rel. Algonquin Golf Club v. Lewis, Mo.App., 395 S.W.2d 522, 524[2]. The question remains whether a landowner who has a qualifying interest to contest a zoning regulation loses that standing because of the adventitious circumstance of a city boundary between his land and the questioned zoning upon which his land abuts. This question has not been ruled upon directly by any appellate court of this state.

Until recent years, the courts had generally held that a nonresident could not challenge zoning regulations, even if his property was adjacent to the questioned zoning.[2] The decline of rural residence and the burgeoning growth of suburban communities, frequently clustered ·on the periphery of metropolitan centers, have made it apparent that the impact of zoning is no longer of concern only to the enacting municipality, but may have extraterritorial effects as well. The landmark case of Cresskill Borough v. Dumont Borough, 28 N.J.Super. 26, 100 A.2d 182, aff'd 15 N.J. 238, 104 A.2d 441 is generally cited as the most influential judicial declaration that the zoning responsibility of a municipality extends beyond its borders. In that case, the borough of Dumont sought to rezone from residential to commercial use a tract within its boundaries. That tract was surrounded by the residential development of other communities, including the borough of Creskill. The lower New Jersey court determined that the borough of Creskill and its residents had standing to challenge the adjoining borough's rezoning, and held: "(T)he restrictions and regulations in a zoning ordinance must be made with reasonable consideration to the character of the land and also to the character of the neighborhood lying along the border of the municipality adopting the ordinance." 28

were aggrieved parties, and thus had standing to intervene in a certiorari proceeding for the review of the denial of the construction permit, was resolved by reference to Wolpe v. Poretsky, 79 U.S.App. D.C. 141, 144 F.2d 505, an action to invalidate a zoning order and to enjoin its operation, which held that an adjoining property owner had a protectable interest, and thus standing, to intervene for those purposes. See, also, State ex rel. Housing Authority of St. Louis County v. Wind, Mo.App., 337 S.W.2d 554, where the question of whether property owners, who did not allege they were specially damaged by the issuance of building permits for adjoining property, had standing to intervene in a certiorari proceeding to review the issuances of the permits was resolved by reference to Kellog v. Joint Council of Women's Auxiliaries Welfare Ass'n Mo., 265 S.W.2d 374, an action

to invalidate the application of a zoning ordinance and to enjoin its enforcement, which determined that allegation of special damage by an adjoining property owner was not required for standing.

2. E. g. Huntington v. Town Board of Oyster Bay, 57 Misc.2d 821, 823, 293 N.Y.S.2d 558, 560; Kamerman v. Le Roy, 133 Conn. 232, 237, 50 A.2d 175, 178; Village of Russell Gardens v. Board of Zoning and Appeals, 30 Misc.2d 392, 219 N.Y.S.2d 501; Clark v. City of Colo. Springs, 162 Colo. 593, 596, 428 P.2d 359, 361. See, also,' Boerner, Standing to Appeal Zoning Determinations: The 'Aggrieved Person' Requirement, 64 Michigan L.R., 1070, 1079; Ayer, Law of Standing, 55 Iowa L.R. 344, 356. Hendel, William and Mary L.R. Vol. 8 pp. 294, 302, "The 'Aggrieved Person' Requirement."

N.J.Super. 26, 43, 100 A.2d 182, 191. Although on appeal the New Jersey Supreme Court found it unnecessary to decide the issue of standing, Chief Justice Vanderbilt delivered this dictum which has since been accorded authoritative recognition:

> "The appellant (contends) . . . that the responsibility of a municipality for zoning halts at the municipal boundary lines without regard to the effect of its zoning ordinances on adjoining and nearby land outside the municipality. Such a view might prevail where there are large undeveloped areas at the borders of two contiguous towns, but it cannot be tolerated where, as here, the area is built up and one cannot tell when one is passing from one borough to another . . . At the very least Dumont owes a duty to hear any residents and taxpayers of adjoining municipalities who may be adversely affected by proposed zoning changes and to give as much consideration to their rights as they would to those of the residents and taxpayers of Dumont. To do less would be to make a fetish out of invisible municipal boundary lines and a mockery of the principles of zoning." 15 N.J. 238, 247, 104 A.2d 441, 445[2].

This sound dictum was the principal authority relied upon by the Supreme Court of Kansas in Koppel v. City of Fairway, 189 Kan. 710, 371 P.2d 113, 116[6, 7] in determining that a statute which authorized protest by owners of land abutting the front or rear of land proposed for rezoning was intended to apply to *all* affected property owners within the designated area, not only affected property owners who were also resident within the enacting municipality. The Kansas court concluded that non-residents had not only the right to have their protests considered by the municipal council in the planning stages of the legislation but also had standing to bring an action for review of the legislative enactment.[3] See, also, Roosevelt v. Beau Monde, 152 Colo. 567, 384 P.2d 96.

The Supreme Court of California in Scott v. City of Indian Wells, 6 Cal.3d 541, 99 Cal.Rptr. 745, 492 P.2d 1137, found the Creskill and Koppel decisions persuasive authority for holding that non-residents owning land lying just outside a city limit were obviously affected by proposed construction of a major development just within the city limits, and thus had standing to contest the validity of the construction permit. The court held, further, that considerations of constitutional due process impose a duty upon a municipality to give affected, although non-resident landowners. notice to the extent given resident land-

---

3. The Missouri protest statute, Section 89.050, V.A.M.S., like its Kansas counterpart construed by the Koppel court, Section 12–708, G.S.1949, contains no express territorial limitation, and provides: "The legislative body of such municipality shall provide for the manner in which such regulations and restrictions and the boundaries of such districts shall be determined, established, and enforced, and from time to time amended, supplemented, or changed. However, no such regulation, restriction, or boundary shall become effective until after a public hearing in relation thereto, at which parties in interest and citizens shall have an opportunity to be heard. At least fifteen days' notice of the time and place of such hearing shall be published in an official paper or a paper of general circulation in such municipality."
 In their count for declaratory judgment, the plaintiffs-appellants in our pending action have alleged as a ground for the invalidation of the zoning ordinances, without specific allusion to Section 89.050, that they were unlawfully denied their right to protest the proposed ordinances because the method for giving notice adopted by the Board of Aldermen of the City of Peculiar was calculated to be ineffective as to them. This allegation, it is fair to conclude, presupposes plaintiffs are "parties in interest" within the meaning of Section 89.050. Plaintiffs-Appellants have not asserted this argument on their appeal, however, so we consider it no further.

owners similarly situated, 99 Cal.Rptr. l.c. 749, 492 P.2d l.c. 1141[4]:

"'Common sense and wise public policy . . . require an opportunity for property owners to be heard before ordinances which substantially affect their property rights are adopted' . . . . . Indeed, the due process clause of the Fourteenth Amendment requires 'at a minimum . . . that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing . . . .' (Mullane v. Central Hanover Bank & Trust Co. (1950) 339 U.S. 306, 313, 70 S.Ct. 652, 656, 657, 94 L.Ed. 865). Zoning does not deprive an adjacent landowner of his property, but it is clear that the individual's interest in his property is often affected by local land use controls, and the 'root requirement' of the due process clause is 'that an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest, except for extraordinary situations where some valid governmental interest . . . justifies postponing the hearing until after the event . . .' (Boddie v. Connecticut (1971) 401 U.S. 371, 379, 91 S.Ct. 780, 786, 28 L.Ed.2d 113)."

See, also, Township of River Vale v. Town of Orangetown, 403 F.2d 684, 686[3] (2d CCA).

■ The rationale of these cases is no less valid, nor the duty of a municipality for due process to a non-resident landowner any less cogent, because the land contiguous to the municipality is less than fully developed. In Whittingham v. Woodridge, 111 Ill.App.2d 147, 249 N.E.2d 332, the Appellate Court of Illinois determined that owners of land outside a village, but contiguous to land subject to an agreement for annexation to the village contingent upon a change in the zoning of that land, had standing to challenge the validity of the proposed rezoning. As against the argument that the annexation agreement, and thus the proposed rezoning, could not be questioned by owners of property beyond municipal borders, the court replied, l.c. 334[1]:

"(I)n amending a zoning ordinance and carrying out these (governmental) functions, property rights of adjacent owners may be adversely affected, and this effect should be weighed and considered in determining whether the legislative act bears a proper relation to the public safety, health and welfare."

\* \* \* \* \* \*

"To permit a thing (the corporate boundary line), so tenuous, to bar a party from objecting to a change in zoning, might in many instances permit the taking of property without due process of law."

See, again, Scott v. Indian Wells, *supra*, l.c. 1141[4].

Although the Missouri courts have not dealt directly with the standing question presented on this appeal, two fairly recent decisions have recognized that extra-territorial factors are to be considered in determining the validity of municipal zoning—thus impliedly recognizing, as well, that landowners extraterritorially affected have an interest legally protectable from such zoning. In Huttig v. City of Richmond Heights, Mo., 372 S.W.2d 833, a property owner sought to invalidate a zoning ordinance which restricted the use of his property to single-family residences, although most of the surrounding land, including that part of the City of Clayton which abutted his land in Richmond Heights, another municipality, was developed for commercial use. Richmond Heights apparently contended that the commercial zoning adopted by the City of Clayton for its own territory, even though contiguous to Richmond Heights, was not determinative of the zoning it should accord plaintiff's tract. The Supreme Court of Missouri responded, l.c. 842[4]: "While defendants properly assert that they are not bound by the zoning in Clayton, it is undoubtedly true that in its own zoning it must consid-

**678**

er that matter, at least to some extent from a *regional* standpoint." In Wrigley Properties, Inc. v. City of Ladue, Mo., 369 S.W.2d 397, the plaintiff landowner contended that the continued refusal to rezone a tract located at the western limits of the City of Ladue from residential to use for a shopping center was arbitrary because the development of the surrounding municipalities had created a regional need for such a facility. The court did not discount the materiality of such a consideration, but determined that under the evidence, l.c. 402[6]: "(I)t does not sufficiently appear that any need therefor of the entire region cannot be provided outside of Ladue but instead it reasonably could be found that there are available nearby larger commercially zoned areas to do so."[4] See, also, Flora Realty and Investment Co. v. City of Ladue, banc, 362 Mo. 1025, 246 S.W.2d 771, 778[4].

Still another, and more recent, decision also treats the subject we consider, if only obliquely, Dahman v. City of Ballwin, Mo. App., 483 S.W.2d 605, was an action to invalidate a municipal zoning of county land recently annexed into the city on the ground, among others, that the municipal ordinance was actually a rezoning, rather than an original zoning, and thus required a larger legislative plurality than actually obtained. The opinion noticed that, although the plaintiffs were not residents of the City of Ballwin which had enacted the ordinance, they were property owners in a subdivision lying adjacent to the land annexed into the city. The court went on to consider the authorities offered by plaintiffs to support the contention that, for validity, the ordinance required a larger vote than it had received. Then, without apparent relation to the context of discussion or to any question of standing, which was in any event not an issue, the court added, l.c.

609[7, 8]: "Likewise, the existence of a corporate boundary line should not deny an adjacent landowner outside the city standing to challenge the validity of a proposed zoning classification, a right granted to residents of the corporate entity. Whittingham v. Village of Woodridge, 111 Ill. App.2d 147, 249 N.E.2d 332." If this declaration was intended as a holding, it is *obiter dictum,* and if not so intended, it cannot be said to rule the standing issue *sub silentio.* In neither event is this decision available to us as authority or precedent on the issue we must determine.

Zoning ordinances constitute an exercise of the police power. A municipality has no inherent police power which is, rather, an attribute of state sovereignty. State ex rel. Sims v. Eckhardt, Mo., 322 S.W.2d 903, 906[2, 3]. The power to zone has been delegated to municipalities by the Enabling Act, sections 89.010 to 89.140, V. A.M.S. and for valid exercise must conform to the terms of that statutory grant. Dahman v. City of Ballwin, Mo.App., 483 S.W.2d 605, 608[3]. The delegation of the zoning power to a municipality is for the express purpose of promoting the "health, safety, morals or the general welfare of the community." Sec. 89.020, V.A.M.S. A zoning ordinance is in derogation of the right of private property and cannot be imposed if it does not bear a substantial relationship to those legislatively declared desiderata for the public good. "A zoning ordinance 'must rest upon some rational basis of classification and apply alike to all persons and things falling within a designated class.'" Flora Realty & Investment Co. v. City of Ladue, banc, 362 Mo. 1025, 246 S. W.2d 771, 778[2]. Once enacted, those purchasing property affected by such zoning have the right to rely that it will not be changed unless required for the public

---

4. These two Missouri cases, among others, are treated in a perceptive and informative article, "Zoning: Looking Beyond Municipal Borders," Washington U.L.Q., 1965, p. 107, to support the author's dual theses that traditional judicial concepts of standing in zoning cases are yielding in favor of affected nonresident landowners and the readiness of courts to consider extraterritorial factors in challenges to municipal zoning.

good. Murrell v. Wolff, Mo., 408 S.W.2d 842, 852[11].

The Enabling Act is reasonably to be understood to extend the benefit of its sanction, that a zoning shall be for the public welfare, not only to the residents of the enacting municipal community, but also to affected non-resident owners of property contiguous to the municipal zoning.

The petition of the plaintiffs is sufficient as a claim for declaratory relief and is sufficient, also, to invoke the equitable jurisdiction of the court for injunctive relief.

Accordingly, appellate cause number 25,734 is reversed and cause is remanded to trial court with directions that the petition be reinstated.

All concur.

PRITCHARD, SWOFFORD and WASSERSTROM, JJ., not participating because not members of the Court when cause was submitted.